S. L. Digby and J. W. Elder, both of Farmerville, for appellant.

Percy Saint, Atty. Gen., Percy T. Ogden, Asst. Atty. Gen., and Wm. J. Hammon, Dist. Atty., of Jonesboro (Herbert Dawkins, of Farmerville, and E. R. Schowalter, of New Orleans, of counsel), for the State.

BRUNOT, J. This case presents no other issues than those disposed of in No. 28160, State v. Dison, 110 So. 642,[1] this day decided. For the reasons assigned in that case, the judgment and sentence in this case are affirmed.

---

### (110 So. 645)

### No. 27893.

### Succession of McRACKEN.

### COLLINS v. ROPPOLO.

(Nov. 2, 1926. Rehearing Denied Nov. 29, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Wills** ⊚⟹796—**Evidence held to show that widow, renouncing all rights as sole beneficiary under will intended only to recognize adopted daughter as forced heir.**

Evidence *held* to show that testator's widow did not intend, by renunciation of all her rights under will, to do more than *recognize adopted daughter* as testator's forced heir, entitled to one-third of estate bequeathed entirely to widow.

2. **Wills** ⊚⟹796—**Judgment annulling widow's renunciation of rights under will held valid as against adopted daughter joining in petition.**

Judgment annulling widow's renunciation of all her rights under will, on joint petition of herself and adopted daughter, *held* valid as obtained with full understanding of such daughter and her husband.

3. **Wills** ⊚⟹192—**Will held not annulled by testator's adoption of daughter (Civ. Code, arts. 214, 1705).**

Will *held* not annulled by testator's adoption of daughter, under Civ. Code, arts. 214, 1705, in view of history of such articles.

4. **Constitutional law** ⊚⟹70(1)—**Courts may correct, ignore, or supply obvious inadvertences, but cannot enact laws or disregard letter of unambiguous laws (Civ. Code, art. 13).**

Courts may sometimes correct, ignore, or supply obvious inadvertences in order to give

---

[1] Ante, p. 437.

---

law its plainly intended effect, but authority to make or amend laws is vested in legislative department, and letter of law which is clear and unambiguous cannot be disregarded under pretense of pursuing its spirit, under Civ. Code, art. 13.

Appeal from Civil District Court, Parish of Orleans; M. M. Boatner, Judge.

In the matter of the succession of James McRacken, deceased, in which Marie Roppolo and husband sued to annul a judgment sending her and Mrs. Laura Hamm McRacken into possession of the estate and for other relief, and Willie Collins sued for partition. From a judgment for Mrs. Laura Hamm McRacken and Willie Collins, Mrs. Roppolo appeals. Affirmed.

Alex M. Swords, of New Orleans, for appellant.

Louis Randolph Hoover, of New Orleans, for appellee Mrs. James McRacken.

O'NIELL, C. J. James McRacken made his last will and testament, in olographic form, on the 17th of May, 1907, bequeathing all of his property to his wife, Mrs. Laura Hamm McRacken, and appointing her executrix, with full seizen of the estate and without bond. On the 24th of February, 1910, Mr. and Mrs. McRacken, by notarial act, adopted as their daughter Marie Barker, then an infant, now the wife of Charles Roppolo. The McRackens had no children or forced heirs at the time of the adoption, and there was no child born to them afterwards. Mr. McRacken died on the 26th of March, 1915, survived by his wife and their adopted daughter. The widow had the will probated and qualified as testamentary executrix, in April, 1915. The inventory showed an estate consisting of half of community property, the whole of which was appraised at $24,552.37 and a separate estate appraised at $2,750.

There was no further proceeding had in the succession until the 14th of October, 1919,

when the widow, represented by an attorney other than the one who represents her now, filed a petition, averring that she was advised that the adopted child was entitled to all of the rights of a legitimate child, and that, in order to carry out more fully the wishes of her deceased husband, and to put into effect more fully her own wishes, to the end that the adopted child should share in the estate of her deceased husband and be entitled to all of the rights of a legitimate child, she formally renounced all of her right, title and interest under the last will and testament of her deceased husband, and desired to qualify as the natural tutrix of her adopted child. She prayed for an order to make an inventory of the estate and for the appointment of an undertutor, without suggesting any one. The judge ordered the inventory made, but it does not appear that a new inventory was made. No further proceedings were had in the succession until the 14th of August, 1925, when a petition was filed jointly by the widow and adopted daughter, the latter being joined and authorized by her husband, Charles Roppolo, in which the petitioners averred that the only purpose of the petition which the widow had filed on the 14th of October, 1919, was to recognize the rights of the adopted daughter in the succession of the deceased, James McRacken; that it was through error of fact and misunderstanding that the widow had renounced her rights under her husband's will; that the petitioners desired and requested that the petition which the widow had filed inadvertently on the 14th of October, 1919, be annulled, withdrawn and stricken from the record; that the adoption of Marie McRacken had had the effect merely of reducing the widow's legacy to the disposable portion, which was two-thirds of the estate of the deceased James McRacken. Wherefore the petitioners prayed that the petition filed by the widow, through error of fact, on the 14th of October, 1919, should be annulled, with-

drawn and stricken from the record; that the legacy to the widow, in the will of her deceased husband, should be reduced to the disposable portion, two-thirds, of the estate; that the adopted daughter should be recognized as an heir of the deceased; and that, in due course, the petitioners should be sent into possession of the estate. The judge rendered an order, reducing the widow's legacy to the disposable portion, two-thirds, of the estate of her deceased husband, and declaring the adopted daughter a forced heir for one-third of the estate. On the 21st of August, 1925, on the petition of the widow for herself and on behalf of her adopted daughter, the judge rendered an ex parte judgment, recognizing the widow as surviving partner in community to be entitled to half of the community estate, and sending her and the adopted daughter into possession, the widow as owner of two-thirds, and the adopted daughter as owner of one-third, of the estate of the deceased, James McRacken.

On the 13th of October, 1925, the adopted daughter, joined and authorized by her husband, brought this suit to annul the judgment rendered in August, 1925, sending her and the widow of James McRacken into possession of the estate; to have the will of the deceased declared annulled by the act of adoption on the 24th of February, 1910; and, if it should not be declared that the will was annulled by the act of adoption, then to have the attempted revocation on the 14th of August, 1925, of the renunciation made by the widow on the 14th of October, 1919, annulled, and the renunciation by the widow reinstated and made effective; and, finally, to have the petitioner, Mrs. Marie McRacken Roppolo, declared the sole heir and entitled to the entire estate of the deceased, James McRacken. The cause of action, to annul the revocation and the judgment rendered in August, 1925, declaring the widow entitled to two-thirds and the adopted daughter one-third of the estate of the deceased, James

McRacken, was set forth in the petition of the adopted daughter as follows: (1) That, in joining the widow in the petition, the petitioner was in complete ignorance of the facts and the law in the premises; (2) that she was not represented by counsel; (3) that she joined in the petition only because the attorney for the widow represented to her, the adopted daughter, that an error had been made in the proceedings, and that her signature was necessary to rectify the error, and represented to her that she was only entitled to have the legacy to the widow in the will of James McRacken reduced to the disposable portion; (4) that petitioner was ignorant of the fact that the widow had theretofore renounced the benefits of the will, and was without knowledge or information of the legal effect of such renunciation; (5) that she was not informed as to the legal effect which her adoption had had on the will of the deceased, James McRacken; and (6) that, if she had been correctly informed of the law and the facts in the premises, she would not have joined in or signed the petition or allowed it to be filed in her behalf.

Before answering the petition, the widow filed exceptions of no cause or right of action, res judicata, and estoppel. The judge ruled that the allegations of the petition did set forth a cause of action, that the judgment under attack could not be the basis for a plea of res judicata in the suit to annul it, and that the plea of estoppel belonged to the merits of the case, to which it was therefore referred. The defendant then answered, denying the plaintiff's allegations of fact which constituted the cause of action, and denying her conclusions of law.

Meanwhile, Willie Collins had bought from the widow her two-thirds interest in one of the pieces of real estate that had belonged to the succession of the deceased, James McRacken, and sued Mrs. Roppolo for a partition of the property. His suit for a partition was consolidated with the original suit of Mrs. Roppolo against Mrs. McRacken, with the understanding and agreement that, if judgment should be rendered in favor of Mrs. Roppolo in her suit against Mrs. McRacken, there should be judgment dismissing the partition suit of Willie Collins against Mrs. Roppolo, but that, if judgment should be rendered in favor of Mrs. McRacken in the suit brought by Mrs. Roppolo, then a judgment should be rendered also in favor of Willie Collins and against Mrs. Roppolo, ordering a partition of the property owned partly by Willie Collins. There was judgment in favor of Mrs. McRacken, rejecting the demands of Mrs. Roppolo, and in favor of Willie Collins, ordering a sale to effect a partition of the property in which he owned the two-thirds interest. Mrs. Roppolo has appealed from the judgment.

The primary object of the suit, according to the prayer of the petition, is to set aside the judgment sending the widow and adopted daughter of the deceased into possession of the estate, and to have it decreed that the will of James McRacken was revoked by the act of adoption on the 24th of February, 1910. To that extent the suit is founded upon article 1705 of the Civil Code, which provides that "the testament falls by the birth of legitimate children of the testator, posterior to its date," and upon article 214, which provides that an adopted person "shall have all the rights of a legitimate child in the estate of the person adopting him" except that "such adoption shall not interfere with the rights of forced heirs." It is contended that the adoption of a child after the making of a will has the effect of annulling the will, the same as the birth of a child, under article 1705 of the Code.

[1] Before considering the question whether the adoption of Mrs. Roppolo annulled the will previously made by James McRacken, we must decide whether Mrs. Roppolo had the right to annul and recede from the judgment which was rendered in response to her peti-

tion and that of Mrs. McRacken, in August, 1925, annulling the renunciation which Mrs. McRacken had made on the 14th of October, 1919, and recognizing her ownership of two-thirds of her husband's estate. If the judgment is valid, Mrs. Roppolo is thereby barred from claiming more than a third of the estate. If it is not valid, Mrs. McRacken's renunciation must stand, and Mrs. Roppolo is thereby entitled to the whole estate. The evidence leaves no doubt that Mrs. McRacken did not intend, by her renunciation, to do anything more than to recognize the adopted daughter as a forced heir of the deceased, James McRacken, and, as such, entitled to one-third of the estate which was bequeathed entirely to Mrs. McRacken. There is nothing to indicate, in the language of the renunciation, that Mrs. McRacken had any idea that the adoption of the child had had the effect of annulling the will, under article 1705 of the Civil Code, or to indicate that she had any thought of the will being null for any cause. On the contrary, she expressed her intention to be that the adopted child should *share* in the estate and have all of the rights of an adopted child. There is no doubt that Mrs. McRacken intended merely to renounce any and all claim to the adopted child's légitime, or one-third of the estate, which was bequeathed entirely to Mrs. McRacken. The attorney who drafted the renunciation simply made a mistake in saying that Mrs. McRacken renounced all of her right, title and interest under the will. Mrs. Roppolo and her husband realized and understood the mistake fully, and felt and willingly obeyed the moral obligation to correct it. It is true that they were not represented by an attorney, or advised by any other lawyer than the one representing Mrs. McRacken, when they signed the petition, asking the court to correct the mistake by annulling the renunciation which Mrs. McRacken had made. But Mr. Roppolo, according to his testimony, had

already consulted an attorney, had explained to the attorney that his wife was adopted after the will was made, and had been advised by the attorney that his wife was entitled to a third of the estate. The testimony of Mr. Roppolo explains fully that the reason why he and his wife decided afterwards to sue for the whole of the estate was that they were advised by the attorney now representing them that the adoption of Mrs. Roppolo by James McRacken had the effect of annulling his will. In the course of his testimony, Mr. Roppolo said:

"Of course, if we were only entitled to one-third, we did not want any more than was coming to us, but it seems, after getting some information of the law, we're entitled to more."

Again, he said:

"It was only to correct the error which had been done in court. Whatever that was we didn't know. Perhaps we had been given more than belonged to us."

On cross-examination by the attorney for the defendant, Roppolo testified thus:

"Q. Didn't I tell you that, under the Code, if a man makes a will and afterwards a child is born, that the will falls?

"A. I think you did say so, yes.

"Q. And didn't I tell you that, in my opinion, an adoption didn't have the same effect as the legitimate birth of a child?

"A. Yes; you told me that adoption didn't have the [same] effect as the birth of a legitimate child, but, as you were saying it was your opinion, I didn't understand that portion of it, because I had understood you to say that it was only your opinion, and not the law; I would never have let my wife sign that petition, nor would I myself. I thought if the law said we could only get one-third, that was all we were asking, and, if more, we wanted it."

In another part of his testimony, Roppolo explained that the purpose of the petition which he and his wife signed jointly with Mrs. McRacken was to put his wife and Mrs. McRacken into possession of the estate as it should have been done, meaning according to their legal rights and without taking advan-

tage of the renunciation which Mrs. McRacken had made.

[2] If, under the law, the adoption of Mrs. Roppolo by James McRacken had the effect of annulling his will, and if Mr. and Mrs. Roppolo were misled in that respect by the advice of the attorney representing Mrs. Mc-Racken when they signed the petition asking that the renunciation which Mrs. McRacken had made on the 14th of October, 1919, should be annulled, the judgment that was prayed for and granted on the petition should not have the effect of depriving Mrs. Roppolo of her right to have it decreed that the will was annulled by the act of adoption. In so far as the judgment, which was obtained on the joint petition of Mrs. McRacken and Mrs. Roppolo, annulled the renunciation which Mrs. McRacken had made on the 14th of October, 1919, the judgment was obtained with a full understanding on the part of Mr. and Mrs. Roppolo and is valid.

[3, 4] Our opinion is that the act of adoption of Mrs. Roppolo by James McRacken did not have the effect of annulling his will. The statement in article 214 of the Civil Code, that an adopted person shall have all of the rights of a legitimate child in the estate of the person adopting him, is not the same as to say that a testament falls by the adoption of a child, merely because article 1705 of the Code says that a testament falls by the subsequent birth of a legitimate child. Article 1705 was adopted as article 1698 in the Code of 1825, the French text being: "Le testament est caduc, quand il est survenu des enfants, depuis qu'il a été fait." The article was not taken from the Code Napoleon, but perhaps from the Partidas, book 6, law 20, title 1, viz.: "A will is revoked by the posterior birth of a child or by another person being adopted by the testator." The reason why the provision relating to adoption was not enacted as the law in Louisiana was that at that time there was no provi-

sion in the statutes for the adoption of children. The Legislature afterwards made provision for the adoption of children by the Act 64 of 1868, p. 77, which was retained as section 2328 of the Revised Statutes and as article 214 in the revision of the Civil Code in 1870. There was then perhaps as good reason for the redactors of the Civil Code, in 1870, to provide that the adoption of a child should annul a will previously made by the adoptor as there was for making the provision that the birth of a legitimate child should annul a will previously made by the parent; but the fact remains that the redactors of the Code, in 1870, after the Legislature had enacted the law providing for the adoption of children, did not see fit to declare that the adoption of a child should annul a will previously made by the adoptor; and the Legislature has not seen fit to make such provision. There is no doubt that article 1698 of the Code of 1825, now article 1705 of the Revised Civil Code, was not intended to apply to the adoption of a child, because, as we have said, adoption was not recognized in the law when the article of the Code was enacted. There are occasions when, in order to give a law the effect which was plainly intended, the courts must correct or ignore or supply obvious inadvertences, but we must never forget that the authority to make or amend the laws is vested not in the judiciary but in the legislative department, and that the Civil Code itself, in article 13, admonishes us that:

"When a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit."

Article 1705 of the Civil Code is founded upon the presumption that a testator does not want his will to stand if a child is born to him after he has made the will, who is not provided for in the will. Without the statute, the court could not supply the presumption. It may be that James McRacken did

not intend that his will should stand after he had adopted the child, Marie McRacken; but the fact that he did not destroy or formally revoke the will, which was a very brief document in his handwriting and in his possession, during the five years that he lived after he had adopted the child, makes it more likely that he did than that he did not intend the will to stand. The record does not disclose that he was a lawyer; but, even if he was a lawyer and intended that his will should be revoked, it is not likely that he would have trusted to the opinion that article 1705 of the Civil Code would have application to the adoption of a child, as well as to the birth of a child, after the will was made.

Our opinion in this case is not altogether in accord with the liberal interpretation that was put upon article 1698 of the Code of 1825 in the Succession of Caballero (Mrs. Conte) v. Executor, 24 La. Ann. 573, where it was held that the legitimation by marriage, subsequent to the making of a will, of a child born previous to the making of the will, had the effect of annulling the will. It is sufficient to say that the ruling in that case is not a precedent for the proposition that the adoption of a child has the effect of annulling a will made previously by the foster parent.

The judgment is affirmed at appellant's cost.