21 So.2d 46

**THORNTON v. E. I. DU PONT DE NE-MOURS & CO.**

No. 37428.

Dec. 11, 1944.

Rehearing Denied Jan. 15, 1945.

Fred G. Benton, of Baton Rouge, for plaintiff-appellant.

Taylor, Porter, Brooks & Fuller, of Baton Rouge (Abel Klaw, of Wilmington, Del., and W. G. Randolph and Ada Mott, both of Baton Rouge, of counsel), for defendant-appellee.

O'NIELL, Chief Justice.

This is a suit for compensation under the Employers' Liability Act. The suit is brought against the employer alone, who does not carry employers' liability insurance. The defendant, without answering the petition, filed a plea of prematurity and an exception of no cause or right of action. The judge of the district court maintained both the plea of prematurity and the exception of no cause or right of action, on the face of the pleadings, and dismissed the suit at the plaintiff's cost. The Court of Appeal for the First Circuit affirmed the judgment maintaining the plea of prematurity and dismissing the suit at the plaintiff's cost. Thornton v. E. I. du Pont de Nemours & Company, 15 So.2d 543. The case is before us on a writ of review granted at the instance of the plaintiff.

The question is whether an injured employee may sue to have the amount of his workmen's compensation fixed by a judgment of court, in order to prevent the loss of his claim by prescription, while the employer continues paying his regular wages.

The paragraphs in the plaintiff's petition, on which the defendant based its plea of prematurity and exception of no cause or right of action, are as follows:

"That during all of this time [from the date of the accident], and even up to the

present time [of the filing of the suit], petitioner has been retained upon the payroll of the said employer, but that he has been unable to do the work of a rigger [which he was doing up to the time of the accident], which requires climbing, picking up and carrying heavy objects, straining and hard manual labor generally, and requires the free and full normal use of both arms and both legs.

"That petitioner has been incapable of doing any of this work, or of undertaking any kind of manual labor, which is the only work for which he is trained and fitted, but that he has been retained upon the payroll of the said employer at the same salary under a medical slip which has required him to perform only light duties.

&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;

"Petitioner shows that he has been paid no compensation whatever by the employer since the date of the accident, and that he was earning at the time $1.37½ per hour upon the basis of an eight-hour day and five days per week, and that thus he is entitled to maximum compensation in the sum of $20.00 per week for a period not to exceed 400 weeks.

&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;

"Petitioner shows that said employer has treated petitioner fairly in every way, and that if it had not been for the sympathetic support and co-operation which he has received petitioner would have been unable to remain upon the job and to earn the substantial income which he has received since the accident, and indeed would have been unable to pass any industrial examination or to undertake any kind of reasonable work and employment for which he is in any sense trained and fitted."

It is admitted in the defendant's plea of prematurity that the defendant paid the plaintiff his weekly wages regularly and continuously from the date of the accident, February 3, 1942, to the date of the filing of this suit, February, 2, 1943. And it is alleged in the defendant's plea of prematurity that, although it does not appear in the plaintiff's petition that the defendant paid the plaintiff compensation, it is nevertheless a fact that on February 8, 1943, that is, on the 6th day after the suit was filed, the defendant ceased paying the plaintiff weekly wages, and, on February 9, 1943, began paying him workmen's compensation at the maximum rate of $20 per week, intending to continue these payments during the period of his disability, as shown by a copy of a letter sent by the defendant to the plaintiff on February 9, 1943. The defendant averred in the plea of prematurity: "That, therefore, there is not presently existing any dispute between the plaintiff and defendant, this exceptor, which entitles plaintiff to institute and prosecute this suit."

The defendant alleged also in the plea of prematurity: "That, moreover, since defendant has actually placed plaintiff on workmen's compensation, as aforesaid, it cannot at this time plead the prescription referred to in plaintiff's petition, and particularly in paragraph 12 thereof."

The prescription referred to in paragraph 12 of the plaintiff's petition and in the defendant's plea of prematurity is the prescription of one year, provided for in

Section 31 of Act No. 20 of 1914 as amended and re-enacted by Act No. 85 of 1926 and by Act No. 29 of 1934,—thus: "Section 31. That in case of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the accident or death the parties shall have agreed upon the payments to be made under this act or unless within one year after the accident proceedings have been begun as provided in Sections 17 and 18 of this Act. Where, however, such payments have been made in any case, said limitations shall not take effect until the expiration of one year from the time of making the last payment. Also, where the injury does not result at the time of, or develop immediately after the accident, the limitations shall not take effect until the expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the said proceedings have been begun within two years from the date of the accident."

The plaintiff avoided the danger of a plea of prescription by filing this suit on the last day before the year would have expired, from the date of the accident. The allegation in the twelfth paragraph of the petition reads as follows: "That the filing of this suit is made necessary by the fact that one year will have soon elapsed since the date of said accident without the said employer having paid petitioner any sum of money whatever as compensation, and that after the lapse of one year unless the suit is filed in the meantime a serious question might be presented as to whether or not petitioner's claim is prescribed."

In the letter which the defendant wrote to the plaintiff on February 9, 1943, and of which a copy is annexed to and forms part of the defendant's plea of prematurity and exception of no cause or right of action, the defendant acknowledged that the reason why the plaintiff's services with the defendant company were terminated on the 8th of February was that he had filed this suit against the company for workmen's compensation. The pertinent paragraphs. of the letter read as follows:

"This will confirm our verbal conversation of yesterday during which I notified you, in behalf of E. I. du Pont de Nemours. & Co., that in view of your having filed suit against the company for workmen's. compensation in the matter entitled Carl K. Thornton v. E. I. du Pont de Nemours. & Co., No. 19,463 on the docket of the Nineteenth Judicial District Court of the State of Louisiana, within and for the Parish of East Baton Rouge, your services with the company were terminated as of the 8th instant.

"Effective as of today, we are placing you on workmen's compensation at the rate of Twenty Dollars ($20.00) per week during the period of your disability as provided by the laws of this state. Your compensation payments will be made at our regular payroll periods, the time of which periods you are familiar. Your first compensation payment will be due and payable. February 26th, 1943.

\* \* \* \* \*

"Our placing you on workmen's compensation is not to be construed as an admission on the part of the du Pont Com-

pany that you are permanently and totally disabled as alleged in your petition."

This protestation, which we have quoted from the letter written by the defendant to the plaintiff on the 9th of February, 1943, shows that the defendant was not willing, even then, six days after the suit was filed, to admit that the plaintiff was entitled to the maximum compensation which he was claiming.

The judge of the district court and the judges of the court of appeal rested their judgment, maintaining the plea of prematurity, upon Subsection 1(B) of Section 18 of the Employers' Liability Act, as amended by Act No. 85 of 1926; which subsection—as we read it—has reference to cases only where the employer pays the compensation due to the injured employee —or to his dependents in the case of a fatal injury. Subsection 1(B) reads as follows: "Unless in the verified complaint above referred to [in Subsection 1(A) of Section 18] it is alleged (where the complaint is filed by the employee or his dependents) that the employee or the dependent is not being or has not been paid, and that the employer has refused to pay, the maximum per cent of wages to which petitioner is entitled under the provisions of this act, the presentation of [or] filing of such complaint shall be premature and shall be dismissed; when such allegation is contained in such complaint and is denied by the employer at the time fixed for the hearing thereunder by the court, if it be shown that such allegations are without reasonable cause or reasonable foundation in fact, said complaint shall be dismissed;

and the question of whether or not such allegation of non-payment is justified under the facts shall be determined by the Court before proceeding with the hearing of the other issues involved."

Subsection 1(B) of Section 18, therefore, does not justify the dismissal of this suit on the face of the plaintiff's petition, because he does allege "that he has been paid no compensation whatever by the employer since the date of the accident", and he repeats that the employer has not "paid petitioner any sum of money whatever as compensation". He showed that the year from the date of the accident would expire on the next day after the filing of his petition and therefore that it was necessary that his suit should be filed on that day in order to avoid the danger of losing his claim for compensation by the prescription of one year from the date of the accident, under Section 31 of the statute, as amended. His allegations as a whole convey the implication that the employer was refusing to pay the compensation of $20 a week, because he alleged that the defendant was continuing to pay him his regular wages of $55 per week, instead of paying him compensation at the maximum rate of $20 per week, from the date of the accident to the date of the filing of the suit.

The plaintiff's admission in his petition that the defendant treated him fairly in every way up to the time of the filing of his suit does not mean necessarily that he had no fear that the defendant might plead the prescription of one year if the plaintiff failed to file his suit within the year after

the happening of the accident. Certainly the plaintiff's admission that he was treated fairly by the defendant up to the time of the filing of the suit did not forbid his protecting himself against the possibility of being met with the plea of prescription if he should withhold the filing of the suit until the year had elapsed. According to Section 31 of the Statute the running of prescription is not interrupted by the employer's continuing to pay the employee his wages in full after the accident has happened. On the contrary, the paying of the wages in full by the employer after the accident has happened is virtually a denial that the employee is entitled to compensation for the loss of wage-earning capacity; and the employee's continuing to receive the wages after the accident has happened might be construed as an admission that he has not suffered any loss of wage-earning capacity. At any rate, Subsection 1(B) of Section 18 of the Employers' Liability Act does not justify a dismissal of an employee's suit for compensation merely because of his alleging that the employer has continued to pay his wages in full from the time when the accident happened to the time of the filing of the suit. According to this subsection, what makes a suit for compensation premature is, not the failure of the employee to allege that the employer has not paid him *his wages,* but the failure of the employee to allege that the employer has not paid him *compensation,* since the accident happened. And the reason for that is given in Section 31, where it is declared that the payment of compensation—not the payment of wages —prevents the running of prescription.

It is conceded in the opinion rendered by the district judge and in the opinion of the court of appeal that their decision in this case is contrary to the decision rendered by this court in the case of Carlino v. United States Fidelity & Guaranty Co., 196 La. 400, 199 So. 228, on rehearing, in 1940. Their Honors and the attorneys for the defendant in this case contend that in our decision in the Carlino case we should have applied Subsection 1(B) of Section 18 of the Employers' Liability Act, as amended by Act No. 85 of 1926. What we decided in the Carlino case, on rehearing, was that an employee who suffered an injury causing the loss of all or a part of his wage-earning capacity had a right of action to determine and to fix the amount of compensation to which he would be entitled, in order to prevent the loss of his claim for compensation by the prescription of one year under Section 31 of the statute, as amended by Act No. 29 of 1934, notwithstanding the employer continued to pay the injured employee, as a matter of generosity, the same wages which he was earning previous to the accident, and notwithstanding he was able to do only the lighter part of his work, and then only with the aid of sympathetic fellow workmen. It is contended now by the attorneys for the defendant, and was contended by the judges of the two other courts, that we should have considered the payment of *wages* after the accident in Carlino's case as the payment of *compensation* under the Em-

ployers' Liability Act, and hence that we should have dismissed Carlino's suit as being premature, on the theory that he was receiving—after the accident—not wages—but compensation—or "the maximum per centum of wages to which [he] petitioner [was] is entitled under the provisions of this act",—as provided in Subsection 1(B) of Section 18 of the act as amended by act No. 85 of 1926.

The reason why we did not refer, in the Carlino case, to Subsection 1(B) of Section 18 of the Employers' Liability Act, as amended by Act No. 85 of 1926 is that we did not consider that subsection applicable to a case where an employer, instead of paying an injured employee compensation after the accident, continues to pay him his wages in full, even though the injured employee has suffered a loss of wage-earning capacity, and is not able to do more than the lighter part of his work. Carlino was employed by the City of Alexandria as a cement worker, in repairing streets, and while so employed he suffered an inguinal hernia. He continued working for about five months, and then submitted to an operation. The city paid him compensation at the rate of 65% of his weekly wages for a period of three months from the time of the operation. He then returned to his work and did the lighter part of it for more than two months, when he suddenly suffered another rupture. As a matter of generosity, and in consideration for Carlino's long term of service, the city continued paying him his regular wages after the second rupture. In fact there was an increase of 5¢ an hour in the scale of

wages paid generally by the city, and Carlino received the benefit of the increase. He was being paid his wages in full at the time when he filed his suit. The date on which he filed the suit was more than a year after the occurrence of the first hernia but was less than a year after the occurrence of the second hernia. The suit was against the insurer of the city, but not against the city. The main defense urged by the insurer in the district court and in the court of appeal, as stated in our opinion in the case, was that the suit was barred by the prescription of one year under Section 31 of the Employers' Liability Act, as amended by Act No. 29 of 1934. The defendant contended primarily, however, that the plaintiff had not lost any of his wage-earning capacity and hence was not entitled to compensation. The judge of the district court gave judgment for the plaintiff, but the Court of Appeal for the First Circuit reversed the judgment and dismissed the plaintiff's suit as of nonsuit. See Carlino v. United States Fidelity & Guaranty Co., 196 La. 400, 199 So. 228. The plaintiff brought the case to this court on a writ of review. On the first hearing we affirmed the judgment of the court of appeal on the ground that the plaintiff had not suffered a loss of wage-earning capacity. On rehearing we decided that the plaintiff was entitled to a judgment determining and fixing the rate of compensation to which he was entitled for the loss of his wage-earning capacity as a result of the second hernia which he had suffered. But we stipulated in our decree that the compensation should not be collectible for the

period during which the plaintiff had received or would continue to receive his wages from the employer. We held that the plea of prescription was not well founded because the suit was brought within the year after the occurrence of the second hernia; and as to the first hernia the plaintiff had been paid all that was due to him in wages and in compensation, and hence had no just claim for compensation for that injury.

Our decision in the Carlino case was supported by the decision which we had rendered in Hulo v. City of New Iberia, 153 La. 284, 95 So. 719, in 1923. We considered it a matter of no importance that Hulo v. City of New Iberia was decided before Subsection 1(B) of Section 18 was added to the Employers' Liability Act by Act No. 85 of 1926, because that subsection has reference to cases only where the employer pays the compensation due to an injured employee, or to his dependents in the case of a fatal injury. That subsection does not have reference to cases where the employer, instead of paying the compensation due to the injured employee, continues to pay his wages in full, after the accident. We had decided in Daniels v. Shreveport Producing & Refining Corp., 151 La. 800, 92 So. 341, in 1922, that the suit for compensation under the Employers' Liability Act was not premature where the employer had continued to pay the maximum amount of compensation due to the injured employee but would not admit liability for a definite amount or for a maximum period. To the same effect was the ruling in Ford v. Fortuna Oil Co., 151 La. 489, 91 So. 849,

in 1922. The authority of these decisions was not impaired by Act No. 85 of 1926.

The defendant relies upon the following cases decided by the Court of Appeal for the First Circuit: Moss v. Levin et al., 10 La.App. 149, 119 So. 558, 120 So. 258, decided in 1929; Reiner v. Maryland Casualty Co., 185 So. 93, decided in 1938; Ulmer v. E. I. Du Pont De Nemours & Co., 190 So. 175, decided in 1939; Carpenter v. E. I. Dupont De Nemours, 194 So. 99, decided in 1940. So far as these decisions by the Court of Appeal for the First Circuit are in conflict with the decision rendered by this court in the case of Carlino v. United States Fidelity & Guaranty Co. the decisions by the court of appeal are not authority. And some of them are not appropriate. For example, in Moss v. Levin et al. the employer did not continue paying the injured employee his wages after the accident happened, but paid him only the maximum compensation of $20 per week from the time of the accident to the time when the suit was filed; and it was because of the payment of compensation—not wages—that the court held that the suit was premature under the provisions of Subsection 1(B) of Section 18 of the Employers' Liability Act. Likewise, in Reiner v. Maryland Casualty Company the plaintiff sued for compensation at the rate of $5.26 per week for 400 weeks, for total permanent disability. He had suffered the loss of an eye and consequent impairment of the sight in his other eye. The defendant was paying him compensation at the rate of $5.26 per week, intending to continue the payments for only 100 weeks, for

the loss of an eye. The court construed literally Subsection 1(B) of Section 18 of the Employers' Liability Act, and held that, because of the admission in the plaintiff's petition that he was receiving regularly the weekly compensation that he sued for, his suit was premature. The difference between that case and this case is that in this case the defendant was not paying compensation but was continuing to pay the employee his regular wages at the time when the suit was filed. In the case of Ulmer v. E. I. Du Pont de Nemours & Co., the accident by which the employee was disabled occurred on July 7, 1938, and the employer then put him at light work and continued paying his wages in full until December 28, 1938, on which date the employer terminated the employee's services and commenced paying him compensation at the maximum rate of $20 per week and was continuing these weekly payments regularly up to the time of the trial of the suit. The only question that the court of appeal was called upon to decide is stated in the court's opinion thus: "The sole question presented in the case is whether or not the plaintiff is entitled to recover compensation from the date of the injury on July 7th to December 28, 1938, during which time he received his regular wages."

The court of appeal decided of course that Ulmer was not entitled to compensation for the loss of his wage-earning capacity for the weeks for which he was paid his regular wages in full, which amounted to more than the maximum compensation to which otherwise Ulmer would have been entitled. The court of appeal expressed its decision completely in the following paragraph, quoted from 190 So. at page 176, thus: "It is obvious that plaintiff did not suffer any loss or diminution in his earning capacity from July 7th to December 28, 1938, as he received full wages for that period. During that period he drew more than the maximum amount of compensation that he would have drawn had he been put on compensation. He suffered no disability during that period as his earnings were not curtailed or affected in any way."

In the Carlino case, on rehearing, 196 La. at page 415, 199 So. at page 232, we referred to the decision in the Ulmer case with approval, so far as it maintained that the injured employee could not collect compensation for the loss of his wage-earning capacity for the weeks for which he was paid his wages in full, because, for those weeks, there was no right of action for compensation.

So far as the court of appeal, in the Ulmer case, held that the suit for compensation subsequent to December 28, 1938, was premature, the case is distinguished from the present case by the fact that in the Ulmer case the employee was receiving —not his wages—but the maximum compensation that was due him at the time when he filed his suit; whereas in the present case the plaintiff was receiving, not compensation, but his wages in full, at the time when the suit was filed and for six days thereafter.

In the case of Carpenter v. E. I. Du Pont de Nemours & Co. the court decided noth-

ing more than that the action was not barred by the prescription of one year under Section 31 of the Employers' Liability Act as amended by Act No. 29 of 1934. The employer had continued paying the injured employee his wages in full for doing lighter work than that which he was doing before the accident happened; and this arrangement continued for a period exceeding a year before the injured employee filed his suit for compensation. The only question was whether the circumstances under which the plaintiff was paid his wages in full, for doing lighter work after the accident happened, warranted the conclusion that the payments of the wages should have the same effect of suspending the period of prescription as if the payments were for compensation. The court found as a matter of fact that the employer's continuing to pay the employee his wages, for doing lighter work after the accident had happened, should be treated as the payment of compensation; but at the same time the court declared that an employer should not be allowed to defeat a just claim for compensation by simply keeping the injured employee on the pay roll for more than a year after the accident has happened, at wages equivalent to or exceeding the amount of compensation to which the injured employee is entitled. The court did not refer to—and had no occasion to refer to—Subsection 1(B) of Section 18 of the statute as amended by Act No. 85 of 1926. In fact the only section of the act that was referred to is Section 31. With reference to that section the court expressed its opinion thus [194 So. 101]: "But the statute itself, as is well known, calls for a liberal

interpretation of its provisions in favor of the injured employee, and it is our confirmed opinion that when, with knowledge of the employee's disabling injury, the employer continues to pay him his usual wages, which is 35% more than the amount of compensation he would have to pay, for performing lighter services than he was doing before, there results a situation in which the provisions of the statute regarding the bar of peremption have been fully satisfied and as long as those payments continue prescription does not run. *Otherwise, it is obvious that the employer could defeat every just claim for compensation for a period of more than fifty-two weeks by simply keeping the injured employee on the pay roll at a wage which is the equivalent of the amount of compensation he would be entitled to, or more, for a year and a day.*" [The italics are ours.]

An employer could not defeat a just claim of an injured employee for workmen's compensation by keeping his name on the pay roll at regular wages for a period exceeding a year, because the employee could interrupt the running of prescription by bringing suit on his claim for workmen's compensation at any time.

The theory of the opinion rendered by the court of appeal in the Carpenter case, as we understand, is that the paying of the unearned wages, in the circumstances of that case, was regarded as the payment of compensation in a disguised form. That must be so because, according to Section 31 of the statute, it is the payment of compensation—not the payment of wages—that prevents the running of prescription

against a claim for workmen's compensation. There is no reason why the payment of wages should prevent the running of prescription against a claim for workmen's compensation, because, according to the wording of Subsection 1(B) of Section 18 of the statute, the payment of wages after the accident has happened does not prevent the injured employee from bringing his suit to have the court fix the amount of the compensation that is due him, and to put a maximum limit upon the number of weeks during which it shall be paid. In the words of that subsection it is only the payment of workmen's compensation that suspends the right of an injured employee to bring suit to fix the amount of compensation to which he is entitled, and to limit the number of weeks in which it is to be paid. Of course if it is shown in any case that the payment of wages to the injured employee after the accident happened was a mere subterfuge or pretense on the part of the employer, intending thereby to lull the injured employee into a sense of security until the expiration of the year, so that the employer might then plead prescription in bar of a suit for compensation, the payments made after the injury might well have the effect of preventing the running of prescription; otherwise an injustice would be sanctioned,—as explained by the court of appeal in the Carpenter case.

It will not do to assume that no employer in such a case would ever take advantage of his right to plead prescription against a just claim for compensation after the year has expired. It is sufficient to say that the injured employee in such a case is not obliged to give the employer the advantage of having the right to plead prescription in bar of a just claim for compensation. In this case, for example, if the injured employee had not brought his suit within the year after the accident happened, he would have received in unearned wages for 52 weeks the total sum of $2,860, but he would have risked the loss of the remaining part of $8,000 of compensation by a plea of prescription against a suit for compensation brought after the expiration of the 52 weeks from the date of the accident.

Adverting now to the Carlino case, there should be no doubt that the reason why we did not refer to Subsection 1(B) of Section 18 of the Employers' Liability Act, as amended by Act No. 85 of 1926, was that that subsection was not deemed applicable to a case where the employer continued paying the injured employee his regular wages, instead of paying him workmen's compensation, after the accident. The omission to cite that subsection was not due to an oversight. The subsection was not referred to in the opinion rendered by the court of appeal, nor was it referred to in the opinion rendered by this court on the original hearing; nor was it referred to in our opinion rendered on rehearing, when we reversed the judgment of the court of appeal. That subsection was not referred to in any of the briefs filed in the case, except in the brief filed by the defendant in support cf its application for a second rehearing. If we had overlooked the subsection in our original opinion, and

in the opinion rendered on rehearing, and if we had deemed it applicable in our consideration of the petition for a second rehearing, we would have given an explanation in a per curiam opinion in refusing the second rehearing,—or we would have granted the second rehearing. If we had erred in that respect it is likely that Subsection 1(B) of Section 18 of the statute would have been amended in one of the several sessions of the Legislature held after we decided the Carlino case. It is not likely that our decision in the Carlino case was not observed closely by those members of the legal profession who are interested particularly in the law on the subject of workmen's compensation. The decision was referred to in a comment by a member of the student board of editors of the Louisiana Law Review in Volume III, No. 4, p. 837, in May 1941. The author of the comment expressed the opinion that our decision in the Carlino case should have been governed by the decision rendered by the Court of Appeal for the First Circuit in Moss v. Levin, 10 La.App. 149, 119 So. 558, 120 So. 258, and hence that, following the liberal interpretation placed by the court of appeal upon Section 31 of the statute, we should have applied Subsection 1(B) of Section 18 to the Carlino case, and should have dismissed the suit as being premature. There is no reason to doubt that that comment was read generally by that large proportion of the members of the profession of law who are particularly concerned in having us interpret correctly the Workmen's Compensation Law. It is quite likely therefore that if our omission to apply Subsection 1(B) of Section 18 of the statute to the Carlino case had been regarded generally as an error the Legislature would have been asked to amend this subsection so as to make it applicable to a case like Carlino's case—or Thornton's case.

In the original petition in this case the plaintiff claimed compensation from "about February 10, 1943." In a supplemental petition, filed several days after the defendant filed its plea of prematurity and exception of no cause or right of action, the plaintiff amended his petition by substituting for the year 1943 the year 1942. No explanation or reason is given in the supplemental petition for changing the year. If the court allows the plaintiff compensation during the period of his disability, not to exceed 400 weeks, or 300 weeks, commencing on February 10, 1942, the number of weeks for which the wages were paid after the accident happened will have to be deducted from the maximum number of weeks.

Our conclusion is that this suit should not have been dismissed on the face of the pleadings. In fact the admissions made in the defendant's pleas of prematurity and of no cause or right of action might be deemed sufficient to justify overruling the pleas without hearing evidence on the subject. But, if the defendant can, without its being inconsistent with the admissions made in the pleadings which it has filed and in the letter which forms a part thereof, make such allegations of fact as will put at issue the question of prematurity, the judge of the district court may hear evidence on the question, and dispose of

it before proceeding with a hearing of the case on its merits. That method of procedure is prescribed in Subsection 1(B) of Section 18 of the Employers' Liability Act.

The judgment of the district court and the judgment of the court of appeal are annulled and the case is ordered remanded to the district court for further proceedings consistent with the opinion which we are rendering in this case. The defendant is to pay the costs of the appeal and of the proceedings in this court; all other costs are to abide the final disposition of the case.

ROGERS and ODOM, JJ., dissent.

FOURNET and HAMITER, JJ., concur.

HAMITER, Justice (concurring).

The instant consideration deals solely with the allegations of plaintiff's petition; defendant, in challenging the action as being prematurely brought, tendered merely a plea of prematurity and exceptions of no right and no cause of action directed at those allegations. It has not answered.

True, defendant did allege certain facts in the plea of prematurity, and it attached to that pleading a copy of a letter purportedly written by it to plaintiff. But there was no trial of the plea in the sense that evidence was adduced in support of those factual averments and the letter. Consequently, defendant's averments and letter are not before us, and we are now concerned only with the question of wheth-

er or not plaintiff's petition on its face discloses a premature institution of the suit.

It is provided in the first part of subsection 1(B) of Section 18 of the Employers' Liability Act, as finally amended, that the presentation or filing of a complaint of an injured employee shall be premature and shall be dismissed unless it be alleged therein that he "is not being or has not been paid, and the employer has refused to pay, the maximum per centum of wages to which petitioner is entitled under the provisions of this act." The payments thus contemplated, obviously, are those made as compensation. According to my appreciation of plaintiff's allegations, the mentioned statutory requirement has been substantially discharged; for petitioner declares specifically in his petition that "he has been paid no compensation whatever by the employer since the date of said accident." Therefore, error, in my opinion, was committed in the District Court and Court of Appeal by the dismissing of plaintiff's suit on the plea of prematurity and the exceptions of no right and no cause of action, all of which, as before shown, were leveled solely at plaintiff's allegations. Such plea and exceptions should have been overruled, thus compelling defendant's filing of an answer and the placing of the allegations of the petition at issue.

Defendant, when its answer is filed, may deny plaintiff's charge that he received no compensation. Should such a denial be made it will create an issue respecting the nature of the payments which plaintiff, admittedly and allegedly, continued to receive from the date of the accident until

the institution of this suit; and that issue will necessitate the taking of evidence, and its determination must occur before proceeding with the hearing, of the other issues involved. If, on that preliminary hearing it be found that those payments (whether they be called by the parties wages or something else) were in the nature or in lieu of the full compensation due and owing to plaintiff under the statute (not earned income, for and commensurate with services actually performed by the employee), the suit must then be dismissed as being premature. Such is the procedure outlined in the last portion of said subsection 1(B) of Section 18, it reading: "* * * when such allegation is contained in such complaint and is denied by the employer at the time fixed for the hearing thereunder by the Court, if it be shown that such allegations are without reasonable cause or reasonable foundation in fact, said complaint shall be dismissed; and the question of whether or not such allegation of nonpayment is justified under the facts shall be determined by the Court before proceeding with the hearing of the other issues involved."

For these reasons, I concur in the decree annulling the judgments of the District Court and the Court of Appeal and remanding the case to the District Court for further proceedings.

ROGERS, Justice (dissenting).

In my opinion the decision of the Court of Appeal is correct.

As I appreciate it, the question to be determined in this case is not as narrow as

it is stated in the prevailing opinion. It is my view that the question is, as stated in the written reasons for judgment handed down by the judge of the district court, "whether or not in the absence of an allegation that there has been a demand for compensation by the employee or a refusal on the part of the employer to pay, an employee has the right to have his claim for compensation judicially determined when at all times since the injury resulting in his disability was sustained, he has received either wages in excess of the amount payable as compensation or the maximum compensation as fixed by the Workmen's Compensation Act, there being no dispute either as to the amount of the weekly payments of compensation to which plaintiff is entitled, or that same is due during his disability not to exceed four hundred weeks."

I quote the following from the opinion of the Court of Appeal in this case as showing the nature of plaintiff's suit, to-wit [15 So.2d 543]: "Plaintiff's injury in this case was sustained on February 3, 1942, from which time, as shown by the allegations of his petition, he was retained on the payroll of the employer, 'even up to the present time,' meaning no doubt the date on which the suit was filed, February 2, 1943. In presenting its defense through an exception of prematurity the defendant alleged the fact was that plaintiff was paid his weekly wages regularly and without interruption from the time of his injury to the date suit was filed; that in his petition he only claims compensation as being due and payable from on or about February 10,

1943, and weekly thereafter, and whilst it does not appear from the petition that he has been placed on compensation, it is nevertheless a fact that on February 8, 1943, after having paid him all wages due up to February 8, 1943, plaintiff was placed on compensation at the rate of $20 per week. Defendant then avers that since plaintiff has actually been placed on compensation a plea of prescription as suggested by him in Article 12 of his petition would be unavailable. In connection with the plea of prematurity defendant also filed an exception of no right or cause of action."

After defendant had filed its plea of prematurity, plaintiff, by supplemental petition, alleged that defendant was indebted to him for the maximum compensation for a period of 400 weeks, the first payment being due and payable on or about February 10, 1942, instead of on or about February 10, 1943, as alleged in his original petition.

Defendant's plea of prematurity is based on Section 18 of Act No. 20 of 1914, as amended by Act No. 85 of 1926 and Act No. 81 of 1930, Dart's Stat. sec. 4408, subd. 1(B), providing that unless in the verified complaint (petition) of the injured employee or his dependent it is alleged that the employee or the dependent is not being or has not been paid, and that the employer has refused to pay, the maximum percent of wages to which the petitioner is entitled under the statute, the presentation or filing of the complaint (petition) shall be premature and shall be dismissed.

Nowhere in plaintiff's petition is it alleged, as required by the statutory provisions hereinabove referred to, that he is

not being paid or has not been paid the maximum percent of wages to which he is entitled. On the contrary, it is alleged and admitted in the petition that the defendant has been paying, and plaintiff has been receiving, more than the maximum percent of his wages as required by the compensation law. In these circumstances, it is correctly argued on behalf of the defendant that its plea of prematurity is well founded and should be sustained by this Court as it was by the district court and the Court of Appeal.

Prior to the adoption of Act No. 85 of 1926, amending Act No. 20 of 1914, this Court held that where there was a dispute between the parties as to the amount due, or as to the period of disability, the employee was entitled to a judgment fixing the amount of compensation, or the time it was due, notwithstanding that when the suit was brought the employer was paying the maximum compensation. Ford v. Fortuna Oil Co., 151 La. 489, 91 So. 849; Daniels v. Shreveport Producing & Refining Corp., 151 La. 800, 92 So. 341; Hulo v. City of New Iberia, 153 La. 284, 95 So. 719. But since the amendment of Section 18, subd. 1(B) by the act of 1926 the Courts of Appeal which, under sections 10 and 29 of Article 7 of the Constitution of 1921, are vested with appellate jurisdiction in workmen's compensation cases, have consistently refused to pass upon claims under the Workmen's Compensation Law where the employee is receiving an amount equal to or in excess of the maximum compensation to which he is entitled. In some of the cases the court has refused to maintain

the suit on the ground that plaintiff had no cause of action and in other cases the court has dismissed the suit upon a plea of prematurity.

In the case of Moss v. Levin, 10 La. App. 149, 119 So. 558, and 120 So. 258, 259 (on application for rehearing), decided in 1929 the Court of Appeal for the First Circuit, held that since the passage of Act No. 85 of 1926 the earlier cases of Ford v. Fortuna Oil Co. and Daniels v. Shreveport Producing & Refining Corp., decided by the Supreme Court, were not controlling where an employee had been paid and was being paid the maximum percent of wages to which he was entitled under the Workmen's Compensation Law. In that case, the employee sued his employer and its insurer for total and permanent disability. The insurance company had paid plaintiff the maximum compensation due under the statute at the time the suit was filed. Plaintiff alleged that these payments had been made only at the pleasure of the insurance company, and that the company had declared it would pay the compensation for only a part of the period for which it was demanded and, furthermore, was disputing the amount of weekly compensation to which plaintiff was entitled; that the defendants had refused to enter into an agreement liquidating the amount of compensation to be paid and the period during which the payments were to be made, and that plaintiff was entitled to have an agreement considered and approved by the court and reduced to a judgment. Defendants' exception of prematurity was overruled and their exception of no right of action

was referred to the merits, on which judgment was rendered in favor of plaintiff as prayed for. The Court of Appeal reversed the judgment of the district court and dismissed plaintiff's suit reserving to him the right under Act No. 20 of 1914, as amended, to bring another suit in case the weekly payments made at the time of suit should cease to be made.

In the opinion refusing the application for a rehearing, the Court of Appeal, referring to Section 18, subd. 1(B) of Act No. 85 of 1926, said:

"This last-quoted provision amplifies and adds to section 18 the requirement that the employee or his dependent shall specially allege that he or said dependent is not being, or has not been, paid, and that the employer has refused to pay the maximum per centum of wages to which the petitioner is entitled under the act.

"It would seem that this provision was deliberately worded to avert the situation caused by the aforementioned decisions interpreting the sections as they formerly existed, but, if not, it is certainly too specific to sanction the institution of a suit, where it is alleged in effect that the maximum per centum of wages have been, and are being, paid."

The decision in the case of Moss v. Levin was followed by the decision rendered by the same Court of Appeal in 1939 in Reiner v. Maryland Casualty Company, 185 So. 93, wherein the judgment of the district court, dismissing a suit for compensation for total and permanent disabili-

ty on a plea of prematurity, was affirmed. In that case, plaintiff had been receiving, and defendant had been paying, the maximum amount of weekly compensation to which plaintiff was entitled. The dispute between the parties was not as to the amount of compensation being paid, but was as to the length of time it should be paid. The plea of prematurity was based on defendant's contention that, as plaintiff was being paid the maximum amount of compensation to which he was entitled, under the law governing the case, Section 18 of Act No. 20 of 1914, as amended in 1926 and 1930, no suit could be filed to have the amount of compensation fixed and to have the period of time during which payment was to be made definitely fixed as long as the maximum compensation claimed was being regularly paid. The decision in Moss v. Levin was cited and approved.

In Pitts v. M. W. Kellogg Co., 186 So. 389, also decided in 1939, the Court of Appeal for the First Circuit, on the authority of Act No. 85 of 1926, Section 18, subsection 1(B), held that an action for workmen's compensation, which is instituted while the plaintiff is receiving maximum weekly compensation, must be dismissed as premature. In its decision, the Court cited with approval its previous decisions in Moss v. Levin and Reiner v. Maryland Casualty Company.

Nor, in the opinion of the Court of Appeal was the situation changed where, instead of compensation, the employee is paid his usual wages. The Court so held in Ulmer v. E. I. Du Pont De Nemours & Co., La.App., 190 So. 175, 176. Plaintiff in that case was injured on July 7, 1938, at which time he was receiving $40 a week as wages. He was put on light work and received his regular wages for services rendered up to December 28, 1938, at which time his services were terminated and he was put on compensation at the maximum rate of $20 per week. This maximum compensation was being paid plaintiff at the time the suit was filed. In that case, as in this case, plaintiff contended that the amount received by him from the date of his injury, July 7, 1938, to December 28, 1938, was not compensation but was an amount paid him as wages for services rendered to his employer and that as he was totally disabled from performing the kind of work he was doing when injured, he was entitled to receive compensation from the date he received his injury. Plaintiff's suit was dismissed on a plea of prematurity, and the Court of Appeal affirmed the judgment holding specifically:

"Plaintiff is claiming compensation under subsection 1(b) of Section 8 of said act which provides that compensation shall be paid for injury producing permanent total disability to do work of any reasonable character at a certain percentum of the weekly wages during the disability, not to exceed four hundred weeks. The basis for awarding an employee compensation under this and the other paragraphs (a) and (c) of this subsection is not because of any damages sustained by the employee on account of the accident, but because of the loss or diminution in his earning capacity. Rylander v. [T.] Smith & Son, Inc., 177 La. 716, 149 So. 434. * * *

"Our ruling in the case must be restricted to the issue presented, and we hold, where an employee receives an injury affecting his capacity to work and is entitled to compensation under those clauses in the compensation law allowing compensation on account of disability, and where such employee, after such disabling injury, continues to receive from his employer his usual wages, whether his services are commensurate with such wages or not, and where such wages are equal to or in excess of the maximum compensation that he could claim for the injury, a suit by such employee for compensation for the period during which the said wages are being paid would be premature. And it follows that no suit for compensation for such period could be maintained after the payment of such wages has terminated and the employee is thereafter paid the maximum compensation up to the time the suit is filed."

Ulmer, the plaintiff, applied to this Court for a writ of certiorari or review to the Court of Appeal. His application, with all Justices concurring, was refused by this Court on November 27, 1939, on the ground that the judgment of the Court of Appeal was correct. No. 35,578 of the docket of this Court.

In Carrere v. City of New Orleans, 162 La. 981, 111 So. 393, this Court held, as shown on pages 1015, and 404, respectively, of the opinion, that the refusal to issue a writ of review to the Court of Appeal under the Constitutions of 1898 and 1913 was not an affirmance of the judgment complained of, being merely a declining to

exercise the jurisdiction of the Supreme Court to review the case, but since the adoption of the Constitution of 1921, a different situation is presented. It was so held by the Court in these words: "Under the Constitution of 1921, art. 7, § 2, an appellate court is required to give its reason or reasons when it declines to exercise its supervisory jurisdiction. Therefore, when the Supreme Court now refuses to issue a writ of review in a case decided by one of the Courts of Appeal and assigns as the reason for refusing the writ that the judgment is correct, it may be said that the Supreme Court affirms or at least approves the decision. But it was not so under the Constitutions of 1898 and of 1913, when writs were refused without an assignment of any reason, and were sometimes refused because of some informality in the application, or because the case involved only questions of fact, or questions of law that were deemed not important enough to warrant an interference with the decree of the court of appeal."

The ruling in the Carrere case, to which we have referred, was cited and approved in the case of State v. Ardoin, 197 La. 877, at page 890, 2 So.2d 633, at page 637.

Both the district court and the court of appeal in this case relied on the decision of the Court of Appeal in the Ulmer case which, under the ruling in the Carrere and Ardoin cases, was affirmed, or at least approved, by this Court in refusing an application for a writ of certiorari or review.

Plaintiff's counsel takes the position that this Court, by its decision in the case of

Carlino v. United States Fidelity & Guaranty Co., 196 La. 400, 199 So. 228, overruled the decision rendered by the Court of Appeal in the Ulmer case, which decision was affirmed or approved by this Court when it refused plaintiff's application for a writ of certiorari or review. In the opinion under review herein, the Court of Appeal for the First Circuit points out that in the Carlino case, on rehearing, after commenting upon the fact that the Court of Appeal for the Second Circuit had based its decision that was reviewed in that case on the ruling in the Ulmer case, this Court makes this statement: "Our opinion is that a suit brought by an injured employee for compensation for a period during which he is paid wages equal to or exceeding in amount the compensation claimed would be unavailing, not on the ground of [prematurity], but because there would be no cause or right of action for compensation for that period." But an examination of the record in the Carlino case discloses that neither an exception of prematurity nor an exception of no right or cause of action was filed in that case. The main defense urged in the Carlino case, both in the district court and in the Court of Appeal, as shown by the record and by the opinion rendered by this Court on rehearing, at page 416 of the opinion in 196 La., at page 233 of 199 So., was that the suit was barred by the prescription of one year under Section 31 of the Employers' Liability Act, as amended by Act No. 29 of 1934. However, as stated in the opinion, this Court did not find it necessary to pass on the plea of prescription, because the suit was brought within one year from the recurrence of the rupture from which the plaintiff was suffering. Obviously, since there was no plea of prematurity filed in the Carlino case, and since the defendant in that case was not relying on the provisions of subsection 1(B) of Section 18 of the Workmen's Compensation Act, as amended by Act No. 85 of 1926, there was no necessity for defendant to specifically allege the statutory provision in bar of plaintiff's suit. And since Act No. 85 of 1926 was not only not embraced, but was not even referred to, in the pleadings filed by the defendant in the Carlino case, this Court was not called upon in that case to consider and did not consider, the effect of the legislative act. As shown by the opinion of this Court in the Carlino case and as admitted by the majority opinion in this case, the decision in the Carlino case was based on the decision that this Court rendered in Hulo v. City of New Iberia, 153 La. 284, 95 So. 719. But as the Hulo case was decided in 1923, it is clear that the Court in that case did not, and could not, consider the effect of the amendment to the Workmen's Compensation Act adopted by the Legislature in 1926.

In view of the circumstances which I have related, and particularly in view of the fact that neither in the Carlino case, nor in the Hulo case was subsection 1(B) of Section 18 of the Workmen's Compensation Act brought before and passed upon by this Court, I do not consider that the Carlino case is decisive of the issue involved in this case, or that it has any bearing on that issue whatsoever. And I am not willing to depart from the jurispru-

dence established by the Court of Appeal and affirmed by this Court in construing subsection 1(B) of Section 18 of the Workmen's Compensation Act, as amended by Act No. 85 of 1926 and particularly as, in my opinion, that jurisprudence is fully warranted by the language of the statutory provision itself.

On page 5 of the majority opinion in this case [21 So.2d 48], I find this language: "The judge of the district court and the judges of the court of appeal rested their judgment, maintaining the plea of prematurity, upon Subsection 1(B) of Section 18 of the Employers' Liability Act, as amended by Act No. 85 of 1926; which subsection—*as we read it*—has reference to cases only where the employer pays the *compensation* due to the injured employee—or to his dependents in the case of a fatal injury." (My italics.) And on page 7 of the majority opinion [21 So.2d 49], I find this statement: "At any rate, Subsection 1(B) of Section 18 of the Employers' Liability Act does not justify a dismissal of an employee's suit for compensation merely because of his alleging that the employer has continued to pay his wages in full from the time when the accident happened to the time of the filing of the suit. According to this subsection, what makes a suit for compensation premature is, not the failure of the employee to allege that the employer has not paid him *his wages,* but the failure of the employee to allege that the employer has not paid him *compensation,* since the accident happened. And the reason for that is given in Section 31, where it is declared that the payment of

compensation—not the payment of wages—prevents the running of prescription."

But I find nothing vague or obscure in subsection 1(B) of Section 18 of the Workmen's Compensation Act, as amended by Act No. 85 of 1926, as I read those provisions. The language used in the statute is plain and explicit and needs no construction. It declares that "unless in the verified complaint * * * it is alleged * * * that the employee or the dependent is not being or has not been paid, and that the employer has refused to pay, the *maximum per centum of wages* to which petitioner is entitled under the provisions of this act, the presentation of (or) filing of such complaint shall be premature and shall be dismissed. * * *" (My italics.) It will be observed that the Legislature ex industria used the term "wages" and not the term "compensation" as the majority opinion in this case seems to indicate it should have used. And I find no reason to attribute to the meaning of the term "wages" the term "compensation" as does the majority opinion in this case. The statute sets forth in unmistakable language that the action of the plaintiff shall be dismissed as being premature where the plaintiff is not being or has not been paid, and the employer has refused to pay "the *maximum per centum of wages* to which petitioner is entitled under the provisions of this act." And not where the plaintiff is not being paid or has not been paid and where the employer refuses to pay the *maximum percent of compensation* to which the plaintiff shall be entitled to be paid.

I find no basis for the reliance in the majority opinion in this case on Section 31 of the compensation law as supporting the interpretation of the term "wages" as used in subsection 1(B) of Section 18 of the Workmen's Compensation Act, as amended by the act of 1926, to mean "compensation" and not "wages." I am of the opinion rather that the term "payments" as used in Section 31 under the liberal interpretation of the compensation statute, is not restricted to actual "compensation" due under the statute but also is applicable to "wages" received by the injured employee for performing lighter services than he was performing before he was injured. In this connection I think it is pertinent to observe that the Court is not authorized to substitute one word for another word in a statute where the substituted word would change the meaning of the law. Lyon Lumber Co. v. Home Accident Ins. Co., 175 La. 476, 143 So. 379.

The plain meaning and intendment of the words used in a statute, in the absence of ambiguity, are the real test of the intention of the Legislature in enacting a statute. And in the case of Succession of McRacken, 162 La. 443, 110 So. 645, 648, this Court correctly held: "There are occasions when, in order to give a law the effect which was plainly intended, the courts must correct or ignore or supply obvious inadvertences, but we must never forget that the authority to make or amend the laws is vested not in the judiciary but in the legislative department, and that the Civil Code itself, in article 13, admonishes us that: 'When a law is clear and free

from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit.' "

I find no basis for maintaining plaintiff's suit since he has not alleged in his petition that he is not being paid, or has not been paid, the *maximum percent of wages* to which he is entitled under the Workmen's Compensation Law. Those allegations are absolutely essential to negative the plea of prematurity which, under the statute, is made available to the defendant.

Plaintiff's other contention that he should be permitted to prosecute the suit at this time in order to interrupt the running of prescription as provided by the statute is also not tenable.

Defendant, in its pleadings, expressly admits that it can not plead the prescription referred to in plaintiff's petition. And in my opinion, it is clear that, under the Workmen's Compensation Act itself, any payments received by the employee and made by the employer or his insurer, although they be made as payment of wages for the performance of lighter duties and not technically as payments for compensation, will prevent the running of prescription.

In Carpenter v. E. I. Dupont de Nemours & Co., decided by the Court of Appeal for the First Circuit in March, 1940, 194 So. 99, it was expressly held, and I think correctly, that where an employer, with knowledge of his employee's disabling injury, continues to pay the employee his usual wages, which are in excess of the amount of compensation the employer

would have to pay for performing lighter services than the employee was performing before the accident, such payments prevent the running of prescription against the employee's claim for compensation as provided in Section 31 of Act No. 20 of 1914, as amended by Act No. 29 of 1934. The Court of Appeal in this case reaffirmed the ruling in reference to the prescription announced in the Carpenter case. In other words, as long as the plaintiff continues to receive from his employer the same wages he was paid before his injury, there is no danger of his suit for compensation becoming prescribed.

The facts in this case are identical with those of the Ulmer case, and I can conceive of no reason why an employer, relying on the doctrine announced in that case as approved by this Court, in order to protect himself, should feel compelled to immediately discharge or place on compensation an employee who has been injured, instead of retaining him on the pay roll at full wages during his convalescence. In the instant case, the wages defendant paid plaintiff for doing lighter work than he performed prior to his injury amounted to $35 a week more than the maximum compensation due him under the compensation law.

I fear that the decision in this case holding that an employee may obtain a judgment against his employer as soon as an injury is suffered, even though there is no dispute as to the amount due as compensation, and even though the employee is receiving his full wages, will result in employers feeling compelled to immediately discharge their injured employees and to put them on compensation, thereby putting an end to the practice followed by many employers, particularly those who carry their own liability insurance, of assisting those of their employees who are injured during the course of their employment in regaining their health.

In my opinion, therefore, the facts of this case, as admitted by the pleadings themselves, do not justify the Court in giving plaintiff a judgment for compensation at this time. In view of the express provisions of Section 18, subsection 1(B), as amended by Act No. 85 of 1926, plaintiff's suit should be dismissed as premature.