ODOM, Justice.
 

 This is a suit for compensation brought against defendant, the insurer of the City of Alexandria, under Section 8, Subsection 1, Paragraph (b), of Act No. 20 of 1914, as finally amended by Act No.
 
 242
 
 of 1928, p. 357, which reads as follows:
 

 “(b) For injury producing permanent total disability to do work of any reasonable character, sixty-five per centum of wages during the period of disability, not, however, beyond four hundred weeks.”
 

 Counsel for plaintiff, the relator here, has concisely stated the cause of action in Paragraph 1 of his application to this court for writs, which paragraph reads in full as follows:
 

 “That this is a compensation suit, brought by plaintiff, Charlie Carlino, for total and permanent disability resulting from a hernia acquired by the plaintiff while performing services incidental to his employment with the City of Alexandria as a laborer in the street repair department in which suit plaintiff seeks judgment for sixty-five (65%) per cent of his wages commencing from September 1936, less the amount of compensation paid.”
 

 There was judgment in the lower court jn favor of the plaintiff for compensation at the rate of $12.28 per week, not to exceed 400 weeks, beginning February 25, 1937, less a credit of $147.36, the amount of compensation paid to plaintiff by defendant from February 25, 1937, until May 20, 1937. Defendant appealed to the Court of Appeal, Second Circuit. That court reversed the judgment of the lower court and dismissed plaintiff’s demands as of non-suit.
 

 Plaintiff applied to this court for writs, which were granted, and the case is now before ■ us on review.
 

 The Court of Appeal reversed the judgment of the trial court for the reason that it found that the hernia, the injury complained of, had not resulted in -disability to do work of a reasonable character, and therefore the plaintiff had failed to make out his case.
 

 In Rylander v. T. Smith & Son, Inc., 177 La. 716, 149 So. 434, 435, this court held that: “The workman’s compensation statute is'riot a statute allowing the workman
 
 damages
 
 for injuries sustained in the course of his employment even through the negligence or fault of his employer. It is essentially insurance against the loss or diminution of earning capacity, see section 8, subsec. 1(a) (b) (c)”.
 

 Therefore, if, as found by the Court of Appeal, the plaintiff, relator here, suffered no loss or diminution of earning capacity, during the period for which he now claims compensation, as a result of the injury sustained, he is not entitled to compensation under the provision of the act which he invokes. In other words, if that injury did not produce disability to do work of any reasonable character, he cannot recover.
 

 
 *405
 
 The pertinent facts are not disputed. For a number of years plaintiff has been employed by the City of Alexandria to work as a laborer in repairing the streets and sidewalks of the city. On September 15, 1936, he visited the office of Dr. Wallace and stated to him that he had been injured in the course of his employment. Dr. Wallace diagnosed the injury as a small left inguinal hernia, and advised plaintiff to submit to an operation at once. Plaintiff agreed to submit to the operation, which was performed on February 25, 1937, plaintiff in the meantime having continued his work as usual. On May 22, 1937, Dr. Wallace, who performed the operation, advised plaintiff that he was cured and that it was safe for him to return to work but advised him to do light work for a while. Plaintiff was paid compensation from February 27 to May 22.
 

 About two days after plaintiff resumed his work, he discovered a small lump, or bump, over the scar resulting from the operation. He reported this to the foreman on the job, and within a day or two was examined by Dr. Wallace, who testified that he found that the hernia had recurred and advised a second operation. Plaintiff did not accept the second operation but continued his work without loss of any time whatever until November 15, 1938, when he received an injury to one of his toes which disabled him until January 6, 1939, for which period he was paid compensation. On January 6, 1939, he returned to his work and continued to work without loss of time up to the date this suit was tried, on February 6, 1939.
 

 Plaintiff alleged in his petition, and the testimony shows, that, at the time he complained of the injury on September 15,. 1936, he was being paid a weekly wage of $18.90 for nine hours work each day, or'
 
 35‡
 
 an hour. In his suit he prayed that his compensation be fixed at $12.28 per' week, or 65 per cent of the amount of his-weekly wage, as provided in Section 8„ Subsection 1', Paragraph (b), of the act..
 

 The testimony shows — in fact, plaintiff admits — that in the month of October, 1936, after he made his original complaint, his pay was increased from 35^ to 40^ an hour, and that, from that time down to the date of the trial of this suit on February 6, 1939, he has been paid each week, except during the weeks he was drawing compensation, more than he was receiving in September, 1936, when he first complained of being injured. There is in the record a schedule showing the amount paid him each week from September 18, 1936, down to February 6, 1939. Plaintiff admits that this schedule is a correct exhibit of the amounts paid him each week. It shows that for the week ending October 23, 1936, he -was paid $24.58, which was $5.68 more than he was receiving when he was injured, and that during no week from October 23, 1936, to February 27, 1937, when he underwent the operation, did he receive less than $21.51, and that for three weeks during that time he received as high as $28. It shows that for the week ending May 28, 1937, the first week he worked after the operation, he received $25, and that for each and every week thereafter until this suit was tried on February 6>,
 
 *407
 
 1939, he received more weekly pay than he was receiving when his injury was first discovered. For the week ending February 3, 1939, the last week he worked before the trial, he received $24.70.
 

 The testimony shows — -in fact, it is not denied — that plaintiff earned what was paid him. Therefore, this is not a case where an employee was paid wages by his employer through sympathy or as a mere gratuity. It is reasonable to assume that, if the City of Alexandria had intended to keep plaintiff on its pay roll through sympathy, it would not have paid him more than he was getting at the time he was injured originally.
 

 There is no testimony to show, nor is it now contended, that plaintiff did not continue to do the same character of work he was doing at the time the hernia developed in 1936, nor is it seriously contended that he. was physically unable to do the work for which he was paid. Dr. Wallace advised him to do light work for a while after the operation, and the testimony shows that by agreement his co-laborers did what they could to “lighten his load”. The testimony shows that in connection with the work of repairing the streets and sidewalks, it becomes necessary at times for those employed to do the work to lift heavy objects, such as blocks of concrete which are taken up, and that plaintiff was relieved from this heavy lifting by his fellow workers unless it became necessary for him to assist. The testimony of his co-laborers shows that plaintiff did, during the entire time, do some hard manual labor. Mr. Daigre, who worked with plaintiff, said that they let him do light work but that “he did load some sand and gravel using a shovel but the heavy work he wouldn’t do it”. Mr. Campbell, another fellow worker of plaintiff’s, was asked whether plaintiff handled heavy tools, such as the tamper which fell on his foot, and he replied “Not unless he had to, unless we was short-handed or something, he never handled any of that”.
 

 Mr. Gaspard, who worked with plaintiff, was asked to summarize briefly how he and others helped the plaintiff, and he said:
 

 “Well, the heaviest lifting we usually done it, of course he had to help sometime; and the heaviest things is not too light, such as shoveling and loading trucks and wheelbarrows, breaking up concrete, that is about the lightest things.”
 

 He was then asked, “Well, he performed the duties that you call the lightest duties ?”, and his answer was, “Yes, sir.”
 

 We understand from this testimony that Mr. Gaspard considered that using shovels in loading trucks and wheelbarrows with sand and gravel, and the breaking up of concrete were the lightest duties that the men had to perform, and he says that plaintiff did such work. We understand also that plaintiff sometimes helped to do the heaviest lifting, although that was usually done by his fellow workers. Clearly plaintiff’s injury did not incapacitate him to do manual labor of a reasonable character, such labor as was expected of the members of the crew employed to repair the streets and sidewalks of the city.
 

 While the testimony shows that- plaintiff did at times complain, yet it does not show
 
 *409
 
 that he suffered pain while at work or that he overtaxed his strength. It shows further that plaintiff is a skilled concrete finisher and that he frequently did that kind of work and was paid 50^ an hour therefor, and that while doing such work his weekly wage exceeded $28.
 

 Dr. Ralph Lampert assisted Dr. Wallace in performing the operation in February, 1937, but saw nothing more of plaintiff until a week before the trial of the case and knew nothing about his physical condition in the meantime. He testified that his examination of plaintiff just before the trial convinced him that plaintiff was not then able to do hard manual labor, for the reason that the hernia had recurred and was constantly growing worse. Dr. Wallace testified that persons afflicted with hernia such as plaintiff had were not necessarily incapacitated to do manual labor such as plaintiff did during the period for which he claims compensation, but that it was better from the standpoint of their health that they refrain from doing so.
 

 Plaintiff based his suit on the proposition that he was entitled to compensation on the ground of total disability to do any work óf a reasonable character. Clearly he failed to make out his case. That plaintiff was able to do work of a reasonable character, such as he was employed to do, is- shown by the fact that he did work and that his work was entirely satisfactory to his employer. That it was satisfactory is shown by the fact that he was paid more after his injury than before. The argument of his counsel that he could do this work only with the assistance of his co-laborers is not borne out by the record, although it is shown that at times they relieved him of lifting heavy objects.
 

 Plaintiff relies on the case of Hulo v. City of New Iberia, 153 La. 284, 95 So. 719. In that case, however, it was admitted that 'plaintiff was severely injured in the course of his employment as an electric lineman, and was admitted that he was entitled to compensation for permanent partial disability. The only question involved was the amount which should be paid him. He was receiving $90.00 per month at the time he was injured. This court said that the testimony satisfied it, as it did the trial judge, “that from the time plaintiff was able to go back to work he was worth no more than $30 per month, and would not be able to earn even that much with any other employer; that what was paid him in excess of that amount was in the nature of gratuity because he was injured in defendant’s employ”. This court fixed the compensation and gave the defendant credit for the full amount paid plaintiff. It cited the case of Norwood v. Lake Bisteneau Oil Co., 145 La. 823, 83 So. 25. In that case plaintiff was injured .while in charge of pumping machinery and went back to work two months after he suffered the injury, but was not able to start the engine; and it was held that he was not able to earn as much after as before the injury.
 

 In the case at bar, plaintiff was able to earn more after than before the injury and never ceased work except during the time that he was drawing compensation for the reasons heretofore stated.
 

 
 *411
 
 For the reasons assigned, the judgment of the Court of Appeal dismissing plaintiff’s suit as of non-suit is affirmed.