This is a suit under the Workmen's Compensation Act, Act No. 20 of 1914, as amended, for the alleged injuries resulting from an accident sustained by plaintiff on January 9, 1943, while in the course and scope of his employment by the defendant. The plaintiff sued for total permanent disability and for compensation for a period not to exceed 400 weeks, less a credit of 77 weeks during which he was employed and received wages.
The district court rendered judgment in favor of plaintiff as prayed for. Defendant has appealed.
It is clearly shown that plaintiff was employed as a Master Electrician by the defendant and that on January 9, 1943, at about 12:50 p.m., he sustained the alleged accident, apparently while he stepped from a stepladder and stooped to pick it up, and while in the scope of his employment. As a result of the accident he injured his back, and although he continued his duties for that day, he was unable to report to work for about two days thereafter, and when he did report to work, he was sent to the. Company hospital, where his back was strapped and where he received treatment for back injury. It appears that he was thereafter assigned to light work, and meanwhile, at his request, he was sent to Dr. H. Theodore Simon in New Orleans, on February 22, 1943. According to the contention *Page 47 
of defendant's counsel, up to that time his trouble was considered by the Company as sickness and not as an industrial accident. However, after Dr. Simon examined him, he reported to Dr. Barnett and Dr. Allen, the Company doctors, that his condition was sacro-iliac strain caused by an accident, and he was thereupon reclassified as an industrial case, which classification should have been made at the outset.
Dr. Simon, on February 22, 1943, merely examined the employee and made recommendations for treatment to the Company doctors, and it is shown by the Company records that in accordance with said recommendations plaintiff visited the hospital on many occasions for diathermy and massage.
In the meantime, while making these regular visits to the Company hospital for treatment and while consistently complaining of his disability, the plaintiff was kept on the payroll on light duty and apparently performed work of some kind, but not of the type which he had performed prior to his accident. In March, 1943, plaintiff, who apparently had much confidence in Dr. Simon, requested that he be sent back to him for another examination and treatment, and at that time Dr. Simon, with the consent of the defendant, hospitalized plaintiff and treated him by applying traction and cast during March and April, 1943, and released him on or about April 26, 1943, at which time he removed the cast, and in its place applied a wired corset. Dr. Simon examined him again on or about June 7, 1943, when he found him much improved and again on or about August 11, 1943, when he found him in good condition. Counsel for defendant sets forth that after August 12, 1943, at which time plaintiff asked to be released for regular duty, his visits to the Company hospital decreased materially, until November 11, 1944, when he reported and asked to be returned to regular duty. It appears that he was classified for regular duty, but that, as a matter of fact, he did not thereafter perform his former duties, nor was he capable of doing so. In any event, it appears that he was kept on the pay roll from January 9, 1943, the date of the accident, to September 30, 1944, having been released shortly before September 30, 1944, because of a cut in the construction force.
Prior to his release plaintiff was examined by Dr. Simon again at the request of the Company, and Dr. Simon found from his examination that the condition which he had diagnosed as sacro-iliac strain, was cured.
Subsequent to his release, on the request of his attorneys, he was examined by Dr. Dean Echols, to wit, on June 22, 1945, who found from his examination, based on subjective symptoms and on the objective sympton of atrophy of the right calf of leg and diminution of the Achilles reflex on the right side, that he had a ruptured intervertebral disc.
Dr. McHugh examined the plaintiff on January 24, 1946, and made the same diagnosis as Dr. Echols.
The defendant relies largely on Dr. Simon's report, which they contend should be given more weight than the reports of Drs. Echols and McHugh, for the reason that Dr. Simon was the physician chosen by plaintiff, and for the reason that he examined and treated plaintiff from the outset, whereas Dr. Echols and Dr. McHugh merely examined plaintiff many months after his accident. Be that as it may, the fact remains that Dr. Simon admits in his testimony that the diagnosis made by Drs. McHugh and Echols could be correct, to the effect that plaintiff suffered a ruptured intervertebral disc, although he, Dr. Simon, maintains that plaintiff's trouble was a sacro-iliac strain from which he recovered. It is to be noted also that Dr. Simon states positively that in his opinion plaintiff is not a malingerer. In view of that opinion of Dr. Simon, as well as of the other testimony in the record, we must give much weight to plaintiff's own testimony to the effect that since the accident he has suffered much excruciating pain from his back, to the extent even that the only time he has any reasonable comfort is when he sits in a straight chair with a hard back and bottom. He testified at the trial that he suffered pain even when he sat down on an overstuffed chair. *Page 48 
[1, 2] It is our conclusion that the preponderance of the evidence, both medical and lay, is to the effect that plaintiff was injured by his accident of January 9, 1943, and that whether his injury is in the nature of a ruptured intervertebral disc or a sacro-iliac strain, he has not recovered and he has remained totally disabled from engaging in his work as Master Electrician and that therefore the finding of the trial court to the effect that he is totally and permanently disabled under the terms of the Compensation Law is correct.
Counsel for defendant contends that even if total disability is found, the defendant should be credited for payments made in the way of wages and benefits in any judgment for compensation granted to plaintiff. Defendant shows that plaintiff was paid from the period January 10, 1943, to September 8, 1944, wages in the amount of $5,534.09, and that he was paid compensation, plus gratuities from January 27, 1943, to September 30, 1944, the sum of $1,002.24, making a total payment by the defendant to plaintiff, subsequent to his accident, of $6,536.33, which defendant claims should be credited towards satisfaction of the amount of compensation found due.
In support of this contention defendant relies mainly on the case of Hulo v. City of New Iberia, 153 La. 284, 95 So. 719, 720 which states in effect that where "an employer, has out of sympathy and benevolence, and with a view to assist, paid an injured employee more than he is really earning, such excess payments should be taken into account as advance payments on the compensation which may be due such employee."
On the other 'hand, plaintiff's counsel prayed for, in their petition, a judgment for compensation for a period of not to exceed 400 weeks, less a credit for the number of weeks during which the plaintiff was employed at the rate of not to exceed $20 per week, and they contend that this is the proper basis for compensation as set forth in the cases of Carlino v. United States Fidelity Guaranty Co., 196 La. 400, 199 So. 228; Thornton v. E. I. DuPont de Nemours Co., 207 La. 239,21 So.2d 46; Holliday v. Martin Veneer Co., La. App., 15 So.2d 168; Vega v. Higgins Industries et al., La. App., 23. So.2d 661; Lee v. International Paper Co., La. App., 16 So.2d 679, and Martin v. State, La. App., 25 So.2d 251. In these cases it was held that plaintiff could not recover compensation for the period of his disability during which he received wages, but that the credit during that period was for the amount of the compensation, without giving credit for the amount in excess of the compensation. In other words, if the compensation is supposed to be $20 per week, and the wage paid during that period is in excess of $20 per week, $20 is credited for the compensation, but not the excess amount.
[3] Counsel for defendant makes the point that the Carlino case supra, and the Vega case supra, were against the insurer of the employer and not against the employer, which fact they contend distinguishes these cases from the Hulo case supra, which was against the employer. However, we agree with the contention of counsel for plaintiff that the insurer and the employer stand in the same position. In the instant case the fact remains that plaintiff was treated as a regular employee for the period approximately from January 9, 1943, when he sustained his accident, to September 30, 1944, when he was discharged, and during that period, while it is obvious that he did not perform his regular duties as electrician, he did perform some work and was obliged to report to work, and we don't believe that it would be equitable to state that whatever he received, in view of these circumstances, was in the nature of advance compensation. Moreover, it does not appear to us that it is incumbent on this Court to pass upon the amount of the wages which were earned by the plaintiff, and the amount paid which was merely as a gratuity. The employer was free to discharge the employee because of his disability and to pay him the regular rate of compensation, but they chose to maintain his employment and to pay him wages. It would be inequitable to charge the employer for compensation in addition to the wages during the period of disability that the employee was employed; but it would also be inequitable to consider the wages paid during said period of employment *Page 49 
as advanced workmen's compensation instead of wages paid for services rendered.
For these reasons, we find the judgment of the lower court to be correct in awarding plaintiff compensation at the rate of $20 per week, not exceeding 400 weeks; however, we find that defendant is entitled to a credit of 87% weeks rather than 77 weeks as allowed by the trial judge, and in that respect the judgment is amended and as amended, the judgment is affirmed.