A rehearing was granted herein because we entertained doubt as to the correctness of our holding that plaintiff is entitled to receive compensation for the 35 weeks after the accident during which he worked for his same employer and earned and received wages about equal in amount to the wages which he earned prior to the accident.
Plaintiff was injured on May 23, 1944. We found that he had sustained fractures of bones in both hands and that the fracture of the right hand was ununited, and *Page 375 
we held that the injuries rendered plaintiff permanently disabled from doing work of any reasonable character.
From the date of the accident to July 16, 1944, plaintiff did no work whatever and was paid compensation for said period.
On July 16, 1944, plaintiff returned to work and was assigned light duties for a few weeks, but was paid substantial wages approximating those which he had previously earned, and which wages each week amounted to several times the compensation to which he would have been entitled had he not returned to work.
After doing light work for a few weeks, plaintiff returned to duties somewhat similar to those in which he was engaged at the time of the accident, and he continued to work and earn his wages until March 18, 1945. During that period also the wages paid him approximated those which he had previously earned, and amounted each week to several times the amount of the compensation which would have been paid him. We found in our original opinion, and we still entertain that view, that during said period plaintiff performed valuable services and actually earned the wages paid him.
Plaintiff was discharged on March 18, 1945, and later brought this suit for compensation, praying that he be awarded the maximum weekly amount, $20 per week, for 400 weeks, subject to a credit in favor of defendants for those weeks following the accident during which he was paid compensation and did not work, and also subject to a credit in favor of defendants for certain other periods after his discharge for which he was paid compensation and received no wages, and subject also to credits in favor of defendants for payments of compensation made for several days during the period of his reemployment on which days he was unable to work.
In holding in our original opinion that plaintiff was entitled to compensation for total, permanent disability, we rendered a decree in his favor for 400 weeks commencing on the date of the accident. We held also that the defendants were entitled to a credit for the amounts which plaintiff had been paid as compensation, but we did not allow credit for those 35 weeks between July 16, 1944, and March 18, 1945, during which plaintiff was reemployed.
Defendants vehemently complain that in not allowing them credit for those weeks during which plaintiff worked for Higgins Industries, Inc., following the accident, and earned and received wages substantially greater than the compensation would have been, our original decree compels them to pay compensation for those weeks in addition to plaintiff's full wages.
[1, 2] Counsel for plaintiff contends that such plea of defendants is one of set-off and should not be entertained by us as the plea was not specially made as required by the provisions of C.P. Arts. 367 and 368. Plaintiff's counsel also cites the case of Marshall v. McCrea, 2 La. Ann. 79. We perceive no merit in such contention. In the first place, plaintiff must make out his case and can recover only such compensation as may be due him. Secondly, Sec. 18, Par. 4, of the Workmen's Compensation Act, Act No. 20 of 1914, as amended, Act No. 85 of 1926, provides in part: "The Judge shall not be bound by technical rules of evidence or by technical rules or (of) procedure other than as herein provided, * * *."
And as said in the case of Dawson v, Jahncke Dry Docks, Inc., 18 La. App. 368, 131 So. 743, 746, the above provision intended that the strict rules of pleading are to be relaxed in compensation cases: "These statutes have in all jurisdictions been held to be paternal in character and parties have not been held to the strict rules of pleading, or to the strict rules of evidence which are necessary in ordinary cases. In fact, it is provided in paragraph 4, section 18, of Act No. 85 of 1926, p. 122, that in compensation cases the strict rules of pleading shall be relaxed."
It is also contended by counsel for plaintiff that during the time plaintiff worked for Higgins Industries, Inc., after the accident neither the defendants, the physician for Higgins Industries, Inc., who treated plaintiff, nor plaintiff himself knew the exact nature of the injuries to plaintiff's left wrist, and that plaintiff did not learn until April 4, 1945, that his left wrist had been fractured. Counsel argues that whereas *Page 376 
plaintiff worked for Higgins Industries, Inc., until March 18, 1945, the compensation due plaintiff should not commence until March 18, 1945, the date of plaintiff's discharge by Higgins Industries, Inc., or from April 4, 1945, the date of the discovery of plaintiff's exact injuries.
We notice in plaintiff's petition the allegation that as a result of the accident plaintiff sustained a fracture of the scaphoid of the left hand, which is ununited, and an impacted fracture of the distal end of the radius of the right hand.
[3] The above injuries of plaintiff, according to the allegations of the petition, and also as shown by the evidence in the record, were sustained by plaintiff immediately upon the happening of the accident and it therefore follows that any compensation which might be due plaintiff should commence as of the date of the occurrence of the accident.
Plaintiff's counsel, in his oral argument, conceded that for those weeks between July 16, 1944, and March 18, 1945, plaintiff should not be awarded compensation, since he worked and earned wages substantially in excess of what his compensation would have been had he not worked, but counsel assents that instead of a credit being allowed to defendants on the 400 weeks compensation for those weeks during that period, the 400 week period should be extended by the number of weeks between July 16, 1944, and March 18, 1945, and, therefore, after the 400 week period would normally terminate it should be extended by that number of weeks.
[4] It is firmly settled that where an employee is injured but is kept on the payroll out of charity, and his wages are paid him purely as a gratuity or a benevolence, and the wages, although not earned, amount each week to at least as much as the compensation would have been, credit on the 400 weeks of compensation is due on a week to week basis for each week such gratuitous payments are made.
It is also well settled that if during any such week the employer or his insurer pays to the injured workman gratuitous wages amounting to more than the compensation would have been, the credit is not to be given to the employer or to his insurer on a dollar for dollar basis, but credit is to be for only one week in compensation for each week in which the gratuitous wages paid him amounted to as much as the compensation would have been.
[5] It has also been held that for the purpose of interrupting prescription a gratuitous payment of unearned wages is tantamount to a payment of compensation, and that for each week during which unearned gratuitous wages are paid prescription which might otherwise accrue is interrupted.
In our original opinion we extracted and quoted language used by the Supreme Court from the case of Holliday v. Martin Veneer Co., 206 La. 897, 20 So.2d 173. The language quoted by us from said case lends weight to the view that our original decree is correct, and that where the injured employee, although he be totally and permanently disabled from doing work of any reasonable character, can nevertheless return to work and earn his wages that credit for those weeks should not be given to his employer or the employer's insurance carrier on any compensation which might ultimately be held due the workman.
There are other cases in which most of the issues presented herein have been discussed and passed upon. Most important of such cases, in addition to the Holliday case, supra, are: Carlino v. United States. Fidelity Guaranty Co., 196 La. 400,199 So. 228; Vega v. Higgins Industries, Inc., et al., La. App., 23 So.2d 661; Lee v. International Paper Co., La. App.,16 So.2d 679; Martin v. State, La. App., 25 So.2d 251; D'Antoni v. Employer's Liability Assurance Corporation, Ltd., La. App.,28 So.2d 49; Annen v. Standard Oil Co. of N.J., La. App.,28 So.2d 46; Gautreau v. Maryland Casualty Co., La. App.,28 So.2d 96; Ulmer v. E. I. Du Pont De Nemours Co., La. App., 190 So. 175; and Thornton v. E. I. Du Pont De Nemours Co.,207 La. 239, 21 So.2d 46.
A reading of the cited cases produces confusion as to what the view of the Supreme Court is on the question presented here, that is to say, whether an employee who is totally and permanently disabled *Page 377 
from doing work of any reasonable character may work and earn substantial wages from the same employer and at the same time and for the same weeks demand and receive compensation. The language in the Holliday case intimates that the view of the Supreme Court is that the injured workman might earn wages from his same employer and at the same time collect compensation for the same weeks.
On the other hand, in some of the above cases, and particularly in the Carlino and Thornton cases, there is language which seems to give the other impression as to the conclusions reached by the Supreme Court. In both the Carlino and Thornton cases it seems to us that the Supreme Court distinguishes between the payment of unearned wages and the payment of earned wages, but only for the purposes of determining whether by the payment of either, prescription of a compensation claim should be interrupted. The court held that if unearned wages are paid, in other words if they are paid only as a gratuity in lieu of compensation, they take the place thereof, and that each payment so made interrupted the running of prescription. We are lead to the belief that it is indicated that the payment of earned wages would not interrupt the running of prescription.
We cannot say, however, except for the expressions in the Holliday decision, that the Supreme Court has indicated that for any other purpose there is a distinction between the payment of earned wages and a gratuitous payment of unearned wages.
In the Carlino case [196 La. 400, 199 So. 232], for example, the Supreme Court said this: "Our opinion is that a suit brought by an injured employee for compensation for a period during which he is paid wages equal to or exceeding in amount the compensation claimed would be unavailing, not on the ground of being premature, but because there would be no cause or right of action for compensation for that period."
It is apparent from the above language that no distinguishment was made between unearned wages and wages paid for services rendered, and that for those weeks during which wages are paid, whether earned or not, there is no cause of action for compensation.
Our reading of the Thornton case strengthens our opinion that the Supreme Court meant exactly that. We refer particularly to the discussion of the case of Ulmer v. E. I. du Pont De Nemours Co., supra. In the Ulmer case [190 So. 176] the Court of Appeal for the First Circuit had said: "* * * where an employee receives an injury affecting his capacity to work and is entitled to compensation under those clauses in the compensation law allowing compensation on account of disability, and where such employee, after such disabling injury, continues to receive from his employer his usual wages, whether his services are commensurate with such wages or not, and where such wages are equal to or in excess of the maximum compensation that he could claim for the injury, a suit by such employee for compensation for the period during which the said wages are being paid would be premature."
The Supreme Court reached the conclusion that the Court of Appeal was incorrect in holding that the suit was premature. However, the court obviously approved of the view of the Court of Appeal that no compensation should be due for those weeks during which wages were earned by the workman, in saying [207 La. 239, 21 So.2d 51]:
"In the case of Ulmer v. E. I. Du Pont de Nemours Co., the accident by which the employee was disabled occurred on July 7, 1938, and the employer then put him at light work and continued paying his wages in full until December 28, 1938, on which date the employer terminated the employee's services and commenced paying him compensation at the maximum rate of $20 per week and was continuing these weekly payments regularly up to the time of the trial of the suit. The only question that the court of appeal was called upon to decide is stated in the court's opinion thus: 'The sole question presented in the case is whether or not the plaintiff is entitled to recover compensation from the date of the injury on July 7th to December 28, 1938, during which time he received his regular wages.' *Page 378 
"The court of appeal decided of course that Ulmer was not entitled to compensation for the loss of his wage-earning capacity for the weeks for which he was paid his regular wages in full, which amounted to more than the maximum compensation to which otherwise Ulmer would have been entitled. The court of appeal expressed its decision completely in the following paragraph, quoted from 190 So. at page 176, thus: 'It is obvious that plaintiff did not suffer any loss or diminution in his earning capacity from July 7th to December 28, 1938, as he received full wages for that period. During that period he drew more than the maximum amount of compensation that he would have drawn had he been put on compensation. He suffered no disability during that period as his earnings were not curtailed or affected in any way.' "
We are impressed particularly by the two words "of course"
used in the first line of the second paragraph of the above quotation, which we believe indicate that the Supreme Court without question approved the view of the Court of Appeal that no compensation should be allowed for the weeks during which the employee earned wages. (Italics ours.)
Our brothers of the Court of Appeal for the First Circuit seem to have interpreted these decisions of the Supreme Court just as we now interpret them. This seems to be indicated by their opinions in Annen v. Standard Oil Co. of N.J., supra, D'Antoni v. Employer's Liability Assurance Corporation Ltd., supra, and Gautreau v. Maryland Casualty Co., supra. The court in the Annen case [28 So.2d 48] used the following language: "* * * In the instant case the fact remains that plaintiff was treated as a regular employee for the period approximately from January 9, 1943, when he sustained his accident, to September 30, 1944, when he was discharged, and during that period, while it is obvious that he did not perform his regular duties as electrician, he did perform some work and was obliged to report to work, and we don't believe that it would be equitable to state that whatever he received, in view of these circumstances, was in the nature of advance compensation. Moreover, it does not appear to us that it is incumbent on this court to pass upon the amount of the wages which were earned by the plaintiff, and the amount paid which was merely as a gratuity. The employer was free to discharge the employee because of his disability and to pay him the regular rate of compensation, but they chose to maintain his employment and to pay him wages. It would be inequitable to charge the employer for compensation in addition to the wages during the period of disability that the employee was employed."
The same court, in the case of Brown v. Continental Oil Co., La. App., 22 So.2d 758, 761, allowed an employer credit for compensation for the number of weeks during which an injured employee worked after the accident. We quote from the opinion in that case: "The evidence is not sufficient, in our opinion, to show that it was comtemplated that he was employed on a longer work week basis than five days a week and his rate of compensation should be computed on wages for that amount of work per week. This entitles him to $16.38 per week, the rate at which he was paid compensation from May 18, 1942, to November 2, 1942, and for which defendants are to be given credit. In addition, it is shown that from November 2, 1942, to March 3, 1943, plaintiff was placed on light duty, performing minor and negligible services, for which he was paid his regular wage. To the extent that these wages covered the amount of compensation that was due him, defendants are entitled to credit also for that period of time. Carlino v. United States Fidelity Guaranty Co., 196 La. 400, 199 So. 228."
The same court allowed a like credit to the employer in the case of Fisher v. Standard Accident Insurance Co. et al., La. App., 28 So.2d 59, 61, and we quote as follows from that case: "The evidence shows that plaintiff has been paid wages since he went back to work for the White Company, and the defendants are entitled to credit for the total number of weeks that his wages equalled or exceeded the sum of $16.25 per week, the weekly compensation to which he is entitled. We are not able to fix the number of weeks during which such wages were paid plaintiff as the evidence on that point is not sufficiently clear. We will allow for *Page 379 
the credit in our degree, in addition to the compensation admittedly paid. See Vega v. Higgins Industries, Inc. et al., La. App., 23 So.2d 661; Brown v. Continental Oil Co., La. App.,22 So.2d 758."
And also in the case of Gautreau v. Maryland Casualty Co., supra [28 So.2d 98], the same court resolved a similar proposition in the same way, and we find in the opinion in that case the following language: "He did continue to work for that employer, performing lighter duties, for almost a year after he had been injured, and in that respect the judgment of the lower court correctly allowed that employer's insurance carrier, defendant herein, credit out of the wages paid to the extent of compensation that was due him. On the termination of that relationship however compensation was still due him as long as he continued to be disabled and that, defendant will have to pay his (him) notwithstanding the fact that he is now receiving wages for performing lighter duties for W. Horace Williams Company."
As we have already said, we readily acknowledge that the language of the Supreme Court in the Holliday case indicates that the court may have had the view that no credit should be given for wages earned by a totally and permanently disabled workman, even where he is working for the same employer, and it would be our duty to follow that conclusion if there was no doubt in our minds as to what was the view of the court.
Reverting again to the Thornton case, which case was decided subsequent to the Holliday case, we quote the following expression of the Supreme Court: "If the court allows the plaintiff compensation during the period of his disability, not to exceed 400 weeks, or 300 weeks, commencing on February 10, 1942, the number of weeks for which the wages were paid after the accident happened will have to be deducted from the maximum number of weeks."
In view of the above we find that the Supreme Court itself, in the Thornton case, and also the Court of Appeal for the First Circuit, in five cases, evidently entertained the same view of the Holliday case as we now express.
[6] We do not believe that it was the intention of the framers of the workmen's compensation statute, that the act should be so construed as to permit a totally and permanently disabled workman to return to work for the employer in whose employ he was at the time his injuries occurred and to earn substantial wages, and at the same time collect compensation from his employer.
[7] We believe that it was the purpose of the act to assure an injured employee, who could no longer earn his living, that he would not become a public charge nor a burden upon his family, and that at least for 400 weeks, or nearly 8 years, he should be provided for by the employer for whom he was working at the time of sustaining his injuries. It seems to us that it would be absurd to say that if an employee should be injured he should have the right to obtain a judgment for compensation for 400 weeks, and if able to earn a substantial livelihood from the same employer, at the same time contend that he is disabled from doing any work of a reasonable character, meanwhile holding the compensation judgment over his employer's head.
[8] In short, we take the view that if, during that period for which compensation is due, the injured workman can earn a substantial living by working for the same employer at wages approximating those earned before the accident, the weeks for which he should earn such wages should be deducted from the 400 weeks during which compensation might otherwise be due to him.
In our original decree we allowed defendants credit for $33.33, the amount paid as compensation for the various days that plaintiff was unable to work during his reemployment, and whereas we have concluded to allow the defendants a credit of $20 for each of the weeks between July 16, 1944, and March 18, 1945, the $33.33 becomes merged therewith.
For the above reasons, we are of the opinion that our original decree was erroneous insofar as it did not give credit to the defendants for the 35 weeks between July 16, 1944, and March 18, 1945, during which plaintiff, Daigle, worked for Higgins Industries, Inc., and, therefor, *Page 380 
our original decree is amended so as to read as follows:
It is ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, Marcelien L. Daigle, and against the defendants, Higgins Industries, Inc., and Maryland Casualty Company, in solido, for workmen's compensation at the rate of $20 per week during the period of plaintiff's total disability, not to exceed 400 weeks, commencing May 23, 1944, subject to a first credit of $136.67 representing compensation paid from May 30, 1944, through July 8, 1944; and subject to a second credit of $700 covering the period between July 16, 1944, and March 18, 1945, during which plaintiff worked after the accident; and subject to a third credit of $680, plus interest, representing the compensation paid for 34 weeks from March 19, 1945, through November 11, 1945; and subject to a fourth credit of $280 representing weekly compensation paid for 14 weeks from November 12, 1945, through February 17, 1946; the installments to bear interest at the legal rate from due date until paid.
Defendant and appellant is to pay the costs of the lower court and plaintiff and appellee is to pay the costs of this appeal.
And as thus amended our said decree is reinstated and made final.
Our original decree amended, reinstated and made final judgment of the court.