50 So.2d 87 (1951)
ANDERS
v.
EMPLOYERS LIABILITY ASSUR. CORP., Limited.
No. 7594.
Court of Appeal of Louisiana, Second Circuit.
January 5, 1951.
*88 Gist, Thornton & Murchison, Alexandria, for appellant.
K. Hundley, Alexandria, for appellee.
HARDY, Judge.
This is a compensation suit in which plaintiff is alleged to have suffered total and permanent disability for which he claims compensation from defendant as the insurer of his employer. After trial there was judgment in favor of plaintiff awarding compensation at the rate of $20.00 per week during disability, not to exceed 400 weeks, less credit for payments theretofore made. The judgment further provided for payment of $36.00 representing certain medical expenses paid by plaintiff; fixed the fees of expert witnesses and recognized the fee of attorney for plaintiff. From this judgment defendant has appealed.
Plaintiff, a skilled carpenter who on occasions worked as a construction foreman or superintendent, was injured on June 10, 1948, when he fell from a sand box, where he was engaged in working, to the ground some twenty-four feet below. As the result of this fall plaintiff sustained, in addition to numerous bruises and contusions, a compressed fracture of the ninth dorsal vertebra and, as was discovered some time after the accident, a chip fracture of the second lumbar vertebra. Additionally plaintiff suffered painful injuries, but of a temporary nature, to his kidneys. Following the accident plaintiff was immediately hospitalized, X-rayed and treated; he remained in the hospital for approximately thirty days during which time unquestionably he suffered severe pain; he was placed on what is referred to as a Bradford frame, which appears to be a stretcher that is depressed at each end and raised in the middle. Frequent opiates and sedatives were administered for the relief of pain, the period of ministration ranging from two to six hours. Plaintiff was placed in a hip to shoulder cast and taken to his home approximately thirty days after the accident, where it was found necessary the following day, by reason of increased pain and suffering, to return him to the hospital for a brief period. The cast was removed after some three months and thereafter a back brace was worn for a considerable period of time. The testimony of the employer's physician does not fix any date of actual discharge of the patient, but in his own words: "* * * as I remember I told him he was able to go back to work and at least try it to see what he could do."
Compensation payments were discontinued by the insurer on or about May 5, 1949. Plaintiff admits that since this time he has made an effort to work and has undertaken some small jobs which appear to have been provided by relatives in the nature of superintending or overseeing construction. However, plaintiff contends that he has never been free from pain since the accident and that his intermittent efforts *89 at working have been attended with distress, discomfort and inconvenience.
The defense is primarily based upon the opinion of Dr. McBride, who was the attending physician, to the effect that plaintiff is recovered from his injury and that his disability, if any, at the time of trial did not exceed 10%. Additionally, the defense of lack of cooperation on the part of plaintiff is urged by defendant, and, finally, it is contended that even in the event plaintiff continues to suffer some pain and disability he is not entitled to an award based upon permanent and total disability. We proceed to a discussion of these several defenses in the order named.
It is true that Dr. McBride, an experienced and thoroughly qualified physician, expressed the opinion from a medical standpoint that plaintiff had almost entirely recovered from his injury subject only to a small percentage of disability. However, quite another opinion was expressed by Dr. Murrell, plaintiff's family physician. In view of this conflict it is necessary to turn to the lay evidence in the hope of resolving the question. We find nothing in the testimony of plaintiff himself which is incredible, nor which indicates that he is distorting or exaggerating his symptoms and his complaints of pain. We think his effort to work, in itself, is evidence of his good faith, Price v. Blythe Bros., La.App., 46 So.2d 159. While it is true that Dr. Murrell's opinion is based to some extent upon plaintiff's subjective symptoms of pain we are persuaded that these symptoms are genuine. Zealous counsel for the defendant is somewhat critical of the nature of the testimony introduced by plaintiff in substantiation of his contention on the ground that the witnesses were the wife and close relatives of plaintiff. While it is true that courts necessarily take relationship into consideration in evaluating testimony of this nature, careful and repeated study of the record before us fails to indicate that the testimony in this case should not be accepted at face value. The coherent nature of the testimony is impressive not because, as is often the case, it shows a pattern which might be suspicious, but because the witnesses are convincing in the impression of fairness and good faith, which results from careful consideration of their testimony.
We note in brief of defendant's counsel in connection with the denial that plaintiff suffers any considerable degree of pain a statement as to plaintiff's "* * * agility in mounting the witness stand and general appearance in court * * *" We point out that the District Judge had full opportunity to make such an observation and apparently was not convinced by plaintiff's appearance and actions in court of the fact that he was not disabled, as is clearly evidenced by the judgment in favor of plaintiff based upon a finding of total and permanent disability. In this connection we call attention to the fact that appellate tribunals accord great weight to findings of fact, which consideration flows, among other sources, from this very opportunity to see and observe the conduct of witnesses at first hand.
There is another circumstance which has been noted by counsel for plaintiff and which we deem of some importance. Defendant caused an examination of plaintiff to be made by Dr. Gene Caldwell, an orthopedic specialist of Shreveport, but no effort was made on trial to produce Dr. Caldwell's testimony with respect to his findings. It has been many times stated that the failure of a party litigant to produce a material witness or to make his testimony available is construed against such party. But here defendant's counsel urges that no such inference should be drawn in the instant case, and in support cites some authority. Concededly it is not necessary for a litigant to produce every available witness, nor with respect to medical testimony is it always necessary to produce every doctor who has made an examination. But in this case when the doctor in question appears to have been the only orthopedic specialist who made an examination of plaintiff, it is only reasonable to conclude that his testimony would have been produced if his findings were favorable to defendant's contentions.
On the whole we feel convinced that plaintiff has thoroughly substantiated *90 his disability by a vast preponderance of the evidence.
The charge of lack of cooperation on the part of plaintiff in submitting to treatment is predicated upon the established fact that plaintiff did not remain in a fixed position in the Bradford frame; that at times he turned from side to side, and even got off of the frame on one or more occasions and lay down on a cot in the hospital room. These facts were quite definitely established by the testimony of Dr. McBride and a Miss Drouett, who was one of the nurses in attendance on plaintiff during his period of hospitalization. Dr. McBride was particularly emphatic in his charges of failure of cooperation, although we do not find that he made any unusual effort to impress this upon plaintiff during the period of his treatment. However, we think the facts upon which defendant relies, as set forth above, are completely nullified by the finding, which we believe inescapable, that on the occasions upon which the related incidents occurred, plaintiff, to a greater or less degree, was under the influence of opiates or sedatives. The nurse repeatedly testified that he turned from side to side in his sleep. And it is convincingly established that opiates and sedatives were being administered at the time, as above observed, at intervals of from two to six hours. Unquestionably plaintiff was suffering agonizing pain and it is only reasonable to assume that the stretcher exaggerated his pain. Indeed, we could hardly convict plaintiff of the charge of lack of cooperation if he had been free from any medication and fully awake. Much less are we inclined to hold him responsible for actions which, under the testimony apropos to this point, were clearly demonstrated to be unintentional, and, indeed, almost unconscious.
With respect to the argument that plaintiff is not suffering permanent and total disability, we need only to call attention to the fact that our jurisprudence has quite conclusively established the fact that the measure of disability is not predicated solely upon the ability to work but also upon the ability to work without pain. An employee is totally disabled if he suffers any substantial amount of pain while performing work of the same character as that in which he was engaged at the time of his injury. Lee v. International Paper Co., La.App., 16 So.2d 679; Gilmore v. George W. Garig Transfer, Inc., La.App. 33 So.2d 99.
Nor is a claimant prejudiced by the fact that the necessity for attempting to support his family by working, even under penalty of pain, requires him to make the effort. Carlino v. U. S. Fidelity & Guaranty Co., 196 La. 400, 199 So. 228.
In connection with the question of disability, defendant insists that plaintiff is able to earn a living by employment as a building superintendent or foreman even if it be conceded that he is disabled from pursuing manual labor as a carpenter, at which trade he was working when injured. While we do not agree with the interpretation of our jurisprudence as relied upon in support of this contention to the effect that the suggested occupations are of the same or a similar nature as the trade of carpentry, we think it unnecessary to engage in a discussion of this point for two reasons. First, we think plaintiff has established the fact that he suffers pain even while engaged in working as a superintendent or foreman. It may be true that his pain is not as intense or as severe as would be the case if he attempted to resume his trade as a carpenter but, nonetheless, the fact of pain and suffering unquestionably exists; and, Second, we are constrained to hold that plaintiff's ability to earn a commensurate living as a building superintendent or foreman is somewhat speculative at best. It is true that he has performed in these capacities on small jobs, primarily in the employ of close relatives, but there is no evidence which would conclusively establish his ability to procure steady employment in such a capacity.
For the reasons assigned the judgment appealed from is affirmed at appellant's cost.